**BRAYMAN CONSTRUCTION CORPORATION and Stephen M. Muck, Petitioners**

v.

**COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF TRANSPORTATION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 2011.
Decided Oct. 5, 2011.

James W. Kutz, Harrisburg, for petitioners.

Jeffrey W. Davis, Assistant Counsel and Jason M. Wolgemuth, Assistant Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and PELLEGRINI, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Before this Court is a motion for summary judgment filed by Brayman Construction Corporation and Stephen M. Muck (collectively, Brayman) seeking a permanent injunction prohibiting the Commonwealth of Pennsylvania, Department of Transportation (PennDot) from using a short-list process and a best-value assessment method of procurement in awarding constructing contracts. For the reasons that follow, the motion for summary judgment is granted.

This matter involves the efforts of PennDot to award a contract for the Interstate–90 Six–Mile Creek Bridge Replacement Project (Project) and all future PennDot projects using a Design–Build Best–Value Process. The Best–Value Process is a two-step selection method mentioned in PennDot's "Publication 448 Innovative Bidding Toolkit" (Publication 448) by which the number of bidders on the Project is short-listed to just three bidders who are then given stipends to prepare their final bids. The first step of the process involves advertising by PennDot for design-build teams. Statements of interest accepted by the design-build teams are analyzed by PennDot based on "certain criteria," the selection criteria which are set forth in the advertisement, and PennDot chooses three design-build teams, i.e., a "short-list." In the second step, the short-listed teams submit technical proposals and later a stipend agreement is negotiated between PennDot and the short-listed contractors pursuant to which they ultimately develop their proposals. Once the stipend agreement is executed by PennDot and the short-listed teams, the design partner for each short-listed team then develops the technical approach which is ultimately evaluated by PennDot. PennDot then publishes on its Electronic Contract Management System website the scope of the work and bid package for the project to be used by both the design professional and by the contractor. Upon receipt of the technical approaches and bids, PennDot utilizes the "Best–Value" approach to analyze the proposals.

## I.

Brayman initially brought an action seeking both a preliminary and permanent injunction to enjoin the use of the Publication 448 Best–Value method on the bidding of the Project because, in contrast to a normal bidding process based on the lowest responsible bidder, the method of bidding actually utilized by PennDot for the Project was one where the contract was awarded on what PennDot believed was the "Best Value" based on its overall review of the bid, not the lowest price. *Brayman Construction Corporation and Stephen M. Muck v. Commonwealth of Pennsylvania, Department of Transportation (Brayman I)* (No. 527 M.D. 2008, filed February 17, 2009). The issue in that case was whether PennDot was authorized under the Procurement Code to utilize the Best–Value process to award contracts under the Procurement Code on the present Project and on any future projects.

Relying on Section 512(g) of the Procurement Code, 62 Pa.C.S. § 512(g),[1] which requires that a contract only be awarded to the lowest responsible bidder, we held that the Best–Value system violated the Procurement Code because in seeking bids for construction contracts, PennDot was not allowed to short-list bidders or evaluate bids based on factors not enunciated in the invitation for bids. We stated that "[t]he 'Best–Value' system violates the Procurement Code because in seeking bids for 'construction contracts,' PennDot is not allowed to short-list bidders or evaluate bids based on factors not enunciated in the invitation for bids."[2] (*Brayman I*) (No. 527 M.D. 2008, filed February 17, 2009, at 17.)

PennDot appealed to our Supreme Court contending, among other things,[3] that it could avoid competitive bidding and short-list the design-build teams that were interested in bidding on the Project through the process called for by Section 905 of the Procurement Code, 62 Pa.C.S. § 905 (relating to procurement of design professional services), before soliciting competitive sealed bids from the short-listed design-build teams and awarding the contract based on the competitive sealed bids. It also argued that after the short-listing process narrowed the field to three teams, it was proper to allow the short-listed teams to engage in multiple step-sealed bidding under Section 512(h) of the Procurement Code, 62 Pa.C.S. § 512(h). Our Supreme Court affirmed our decision and remanded the matter to this Court for further proceedings. *Brayman II*. Relying on our Supreme Court's decision, Brayman now requests that we grant its motion for summary judgment seeking a permanent injunction arguing that the Supreme Court's decision is persuasive in this matter.[4]

1. Section 512(g) of the Procurement Code provides, in relevant part:

   (g) **Award.**—The contract shall be awarded within 60 days of the bid opening by written notice to the lowest responsible bidder or all bids shall be rejected except as otherwise provided in this section.

2. We also determined that because the bridges at issue were in need of immediate replacement and the public would be harmed if the contracting process was delayed by one year to 18 months if PennDot had to start all over in seeking bids, we ordered that PennDot was enjoined from seeking and evaluating design build contracts using the Best–Value method or any other "innovative method" that did not award the bid based on sealed competitive bids. On appeal, our Supreme Court also upheld this part of our decision stating that we properly denied the preliminary injunction preventing the current use of the procurement process based on the harm the traveling public could suffer if PennDot were required to start over in its procurement process for the Project. *Brayman Construction Corporation v. Department of Transportation (Brayman II)*, 608 Pa. 584, 611–12, 13 A.3d 925, 942 (2011).

3. PennDot also argued that this Court erred in granting a preliminary injunction because the Procurement Code authorized it to use not only competitive sealed bidding under Section 512 of the Code but also Section 513 (also related to competitive sealed bids), yet we failed to address Section 513. However, our Supreme Court stated that throughout the proceedings, PennDot never indicated that it sought contracts under Section 513 or intended to do so in the future. In footnote 8 of its brief, PennDot has abandoned this argument.

4. In the alternative, Brayman contends that the "law of the case" doctrine applies to this matter and the Supreme Court's decision is binding and a final ruling on the merits. "This doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." *Commonwealth v. Starr*, 541 Pa. 564, 565, 664 A.2d 1326, 1331 (1995). However, in *Philadelphia Fire Fighters' Union, Local 22, International Association of Fire Fighters, AFL–CIO v. City of Philadelphia*, 901 A.2d 560 (Pa.Cmwlth.2006), we explained why the

An application for summary relief filed pursuant to Pa. R.A.P. 1532(b) is generally the same as a motion for peremptory judgment filed in the court of common pleas. *See* Official Note to Pa. R.A.P. 1532(b) which provides: 'Subdivision (b) of this rule is a generalization of Pa. R.C.P. No. 1098 (peremptory judgment)'. Summary relief may be granted only where the right thereto is clear. Pa. R.A.P. 1532(b). Where there are material issues of fact in dispute or if it is not clear that the applicant is entitled to judgment as a matter of law, the application will be denied. [*Marshall v. Board of Probation and Parole*, 162 Pa. Cmwlth. 256, 638 A.2d 451 (1994).] *See also* Darlington, McKeon, Schuckers & Brown, 1 Pennsylvania Appellate Practice § 1532:7 (1995). *Sherman v. Kaiser*, 664 A.2d 221, 225 (Pa.Cmwlth.1995).[5]

## II.

■ Brayman contends that its right to relief is clear because the short-list process used by PennDot is illegal under the express provisions of the Procurement Code. Section 511 of the Procurement Code, 62 Pa.C.S. § 511, mandates that:

> Unless otherwise authorized by law, all Commonwealth agency contracts **shall be awarded by competitive sealed bidding under section 512** (relating to competitive sealed bidding) except as provided in:
>
>     *     *     *
>
> **Section 905 (relating to procurement of design professional services).**

(Emphasis added.)

Section 512(a) of the Procurement Code, 62 Pa.C.S. § 512(a), provides that "[c]ontracts shall be awarded by competitive sealed bidding except as otherwise provided in section 511 (relating to methods of source selection)." Subsection (b) of Section 512 provides that "an invitation for bids shall be issued and shall include a procurement description and all contractual terms, whenever practical, and conditions applicable to the procurement." Section 512(g) of the Procurement Code, 62 Pa.C.S. § 512,[6] requires that a contract

---

"law of the case" doctrine does not apply to preliminary injunctions stating:

> Far from establishing a "law of the case," a preliminary injunction is a temporary remedy that cannot serve as a final adjudication of the merits.... A preliminary injunction is to put and keep matters in the position in which they were before the [alleged] improper conduct of the defendant commenced. The sole object of a preliminary injunction is to preserve the subject of the controversy in the condition in which it is when the order is made, it is not to subvert, but to maintain the existing status until the merits of the controversy can be fully heard and determined. In the hearing upon a preliminary injunction, it is neither necessary nor proper to decide the case as though on final hearing. A preliminary injunction cannot serve as a judgment on the merits since by definition it is a temporary remedy until that time when the party's dispute can be completely resolved.

901 A.2d at 565. Consequently, the "law of the case" doctrine has no application to a preliminary injunction proceeding.

5. This Court may only grant a permanent injunction when 1) the right to relief is clear; 2) the relief is necessary to prevent a legal wrong for which there is no adequate redress at law; and 3) greater injury will result from refusing rather than granting the relief requested. *P.J.S. v. Pennsylvania State Ethics Commission*, 669 A.2d 1105 (Pa.Cmwlth. 1996).

6. Section 512(g) provides the following:

> Section 512(g) Award. The contract shall be awarded within sixty (60) days of the bid opening by written notice to the lowest responsible bidder or all bids shall be rejected except as otherwise provided in this Section. Extensions of the dates the award may be made by mutual written consent of the Contracting officer and the lowest re-

can only be awarded to the lowest responsible bidder.

PennDot contends that it is not required to competitively bid the projects and can develop a "short-list" of design-build teams through the process outlined in Section 905 of the Procurement Code, 62 Pa.C.S. § 905, relating to the "Procurement of design professional services." Section 905 of the Procurement Code provides, in relevant part, the following:

a. Applicability.—Design professional services shall be procured as provided in this section except as authorized by sections 514 (relating to small procurements), 515 (relating to sole source procurement) and 516 (relating to emergency procurement).

b. Policy.—It is the policy of this Commonwealth to publicly announce all requirements for design professional services and to award contracts for design professional services on the basis of demonstrated competence and qualification for the types of services required. There shall be a committee to review the qualifications, experience and work of design professionals seeking contracts with purchasing agencies.

\*　　\*　　\*

d. Selection committee for all other Commonwealth agencies. Except as provided for in subsection (c) [not applicable here], all purchasing agencies shall use the selection committee appointed by the Governor which shall be composed of five members, none of whom shall be employees of the Commonwealth or hold any elective office or office in any political party. The members shall be architects, engineers or other persons knowledgeable in construction.

e. Procedure for selection committees. The selection committees shall use the procedure set forth in this subsection:

1. The committee shall give public notice of projects requiring design services and publicly recommend to the purchasing agency three qualified design professionals for each project.

2. If desired, the committee may conduct discussions with three or more professionals regarding anticipated design concepts and proposed methods of approach to the assignment. The committee shall select, based upon criteria established by the head of the purchasing agency, no less than three design professionals deemed to be the most highly qualified to provide the services required. In exercising its responsibility, the committee shall consider the following factors:

(i) An equitable distribution of contracts to design professionals.

(ii) Particular capability to perform the design or construction services for the contract being considered.

(iii) Geographic proximity of the design professional to the proposed facility.

(iv) The design professional selected has the necessary available personnel to perform the services required by the project.

(v) Any other relevant circumstances peculiar to the proposed contract.

PennDot contends that it can use Section 905(b) of that section to "short-list" bidders, which provides for a selection committee to review the qualifications, ex-

---

sponsible bidder. Within thirty (30) days of the bid opening the Contracting officer shall, if bid security was required for the invitation of bids, return the bid security to all but the lowest and next to lowest responsible bidders then under consideration for contract award.

perience and work of the design professionals.[7]

However, in *Brayman II,* our Supreme Court, in affirming our decision in *Brayman I,* rejected that contention stating:

Initially, we note, as did the Commonwealth Court, that the general rule for procurement under the Code is that, "[u]nless otherwise authorized by law, all Commonwealth agency contracts shall be awarded by competitive sealed bidding under section 512[.]" 62 Pa.C.S. § 511. Section 511 lists several exceptions to this general rule. Among other things, these exceptions authorize a procuring agency to use the procedures outlined in Section 905 (relating to procurement of design professional services). *See generally* 62 Pa.C.S. § 511 (listing exceptions to the general rule). In view of these provisions, the Commonwealth Court reasoned, first, that the Code's "default position" is that contracts must be awarded by sealed competitive bids under Section 512, unless there is a specific exception that allows a different method. *Brayman,* No. 527 M.D. 2008, *slip op.* at 14 (citing 62 Pa.C.S. § 511). The court acknowledged PennDOT's assertion that [Design–Build Best–Value] DBBV falls under one of the exceptions listed in Section 511, namely, Section 905, which PennDOT construed as permitting design professional services to be awarded through a two-step procurement methodology. Even assuming PennDOT's interpretation of Section 905

was correct, the court indicated that, in DBBV procurement, PennDOT seeks, not the procurement of design services, but a "design-build contract, which by definition is a 'construction contract.'" *Id.* at 17 (quoting 62 Pa.C.S. § 103). Thus, the court concluded that the DBBV system violates the Code because, in seeking bids for construction contracts, PennDOT is not authorized to short-list bidders or evaluate bids based on factors not enunciated in the invitation for bids. *See id.* at 17; 62 Pa.C.S. § 512(e) (*quoted in supra* note 15).

\* \* \*

Even if we assume that Section 905 allows DBBV-type short-listing of design firms when obtaining design professional services, the Commonwealth Court determined that design-build agreements do not qualify as contracts for design professional services because the Code defines them as a type of construction contract, *see* 62 Pa.C.S. § 103, and PennDOT does not attempt to cast doubt upon that determination. In fact, PennDOT has not supplied this Court with any developed advocacy concerning the substance of the Commonwealth Court's legal analysis, thereby waiving any challenge to that analysis for purposes of the present appeal. Accordingly, we find no basis to question it at this juncture.

*Id.,* 608 Pa. at 606–10, 13 A.3d at 939–940. Because Section 905 of the Procurement Code does not relate to procurement of

---

7. "Design professional services" are defined as:

[t]hose professional services within the scope of the practice of architecture, geology, engineering, landscape architecture or land surveying, including studies, investigations, surveying, mapping, tests, evaluations, consultations, comprehensive planning, program management, conceptual design, plans and specifications, value en-

gineering, maintenance manuals and other related services associated with research, planning, development, design, construction, alteration or repair of real property. The term includes services provided under the supervision of a professional engineer to develop engineering software which will aid design professionals in performing their work.

62 Pa.C.S. § 901.

construction contracts, but only to procurement of design professionals, Section 905 does not authorize the use of a short-list process to select construction contractors.

### III.

■ Even if it was not permitted to short-list under Section 905 of the Procurement Code, PennDot argues that the short-listing process is authorized under Section 512(h) of the Procurement Code relating to multi-step sealed bidding. Section 512(h) provides:

> **(h) Multistep sealed bidding.**—When it is considered impractical to prepare initially a procurement description to support an award based on price, an invitation for bids may be issued requesting the submission of unpriced bids, to be followed by an invitation for bids requesting priced bids from responsible bidders of the first solicitation.

62 Pa.C.S. § 512(h). PennDot contends that it can use this process to short-list because it allows the department to select the most qualified bidders, i.e., most responsible bidders to the initial unpriced bid. That argument is not supported by Section 512(h) standing alone or with the overall scheme laid out in awarding contracts in Section 512.

At the core of the argument that Section 512 allows short-listing is that it can determine who is a responsible bidder by selecting the design build teams it believes are the "best." Section 103 of the Procurement Code defines "responsible bidder" as a "bidder that has submitted a responsive bid and that possesses the capability to fully perform the contract requirements in all respects and the integrity and reliability to assure good faith performance." 62 Pa.C.S. § 103. Under this provision then, so long as a contractor to the unpriced bid is a responsible bidder, that bidder can

submit a bid for the priced bids without any short-listing of contractors that PennDot thinks submitted the best unpriced bids.

Moreover, within the overall context of Section 512, it is clear that short-listing is not authorized. That section provides, in relevant part, the following:

> **§ 512. Competitive sealed bidding.**
>
> **(a) Conditions for use.**—Contracts *shall be awarded by competitive sealed bidding* except as otherwise provided in section 511 (relating to methods of source selection).
>
> **(b) Invitations for bids.**—An invitation for bids shall be issued and shall include a procurement description and all contractual terms, whenever practical, and conditions applicable to the procurement.
>
> **(c) Public notice.**—Adequate public notice of the invitation for bids shall be given a reasonable time prior to the date set for the opening of bids. The purchasing agency shall establish written policies and may promulgate regulations regarding methods of public notice.
>
> **(d) Bid opening.**—Bids shall be opened publicly in the presence of one or more witnesses at the time and place designated in the invitation for bid.... The record shall be open to public inspection.
>
> **(e) Bid acceptance and evaluation.**—Bids shall be unconditionally accepted without alteration or modification except as authorized in this part or in the invitation for bids. *Bids shall be evaluated based on the requirements set forth in the invitation for bids, which may include criteria to determine acceptability such as inspection, testing, quality, workmanship, delivery and suitability for a particular purpose. Those criteria that will affect the bid price and be considered in evaluation for award*

*shall be **objectively measurable**, such as discounts, transportation costs and total or life cycle costs. The invitation for bids shall set forth the evaluation criteria to be used. No criteria may be used in bid evaluations that are not set forth in the invitation for bids.*

\* \* \*

**(g) Award.**—*The contract shall be awarded within 60 days of the bid opening by written notice to the lowest responsible bidder or all bids shall be rejected except as otherwise provided in this section.*

62 Pa.C.S. § 512. (Emphasis added.) What is clear from these subsections of Section 512 is that any criteria which are established for the basis of an award must be objectively measurable and must be specifically set forth in the invitation to bid. In *Brayman I,* we addressed Section 512 stating:

Under this provision then, PennDot is required to issue invitation of bids allowing all prequalified bidders to submit sealed bids on construction projects; all bids are then required to be evaluated, with no intermediate step of short-listing of bidders, on the criteria selection set forth in the bids; and PennDot is required to award to the lowest responsible bidder. Because the Best–Value method of awarding contracts violates all of those precepts, the use of that

method is illegal under the Procurement Code and justifies the grant of a preliminary injunction. *American Totalisator Co., Inc. v. Seligman,* 489 Pa. 568, 575, 414 A.2d 1037, 1040–41 (1980). ("A court may enjoin the award of a public contract when irregularities are shown in the bidding process.")

*Brayman I,* (No. 527 M.D. 2008, filed February 17, 2009, at 17–18.)

Even if PennDot has proceeded under Section 512(h) for the Project, it still must use measurable criteria in developing the short-list of design-build teams, and all of those design-build teams chosen must be "responsible bidders" who are capable of being able to fully perform the contract requirements in all respects and have the integrity and reliability to assure good faith performance. 62 Pa.C.S. § 103. Simply by attempting to proceed under a different subsection of Section 512 does not give PennDot a free pass on the bidding requirements under Section 512(e) and allow it to use its two-step process.[8] For all these reasons, the design-build best-value method used by PennDot is illegal because it permits subjective evaluation of construction contractors rather than utilizing criteria that are objectively measurable.

Because PennDot's use of its version of the Best–Value method is illegal under the

---

8. The ABA Model Procurement Code, which the Pennsylvania Procurement Code was modeled after, uses different language under the "Multi–Step Sealed Bidding" section stating:

When it is considered impractical to initially prepare a purchase description to support an award based on price, an Invitation for Bids may be issued requesting the submission of unpriced offers to be followed by an Invitation for Bids *limited to those bidders whose offers have been qualified under the criteria set forth in the first solicitation.*

Section 3–202(8) of the ABA Model Procurement Code. (Emphasis added.) Unlike the ABA Model Procurement Code, the Pennsylvania Procurement Code uses the term "responsible bidders" instead of "bidders whose offers have been qualified under the criteria set forth in the first solicitation." That difference in language indicates that all responsible bidders are allowed to bid on the prices bids, not just those who have submitted "responsive bids." 62 Pa.C.S. § 103. In any event, the ABA Model Procurement Code does not allow shortlisting on which bids the Agency determines are the "best."

Procurement Code, Brayman has proven that its right to relief is clear, an injunction is necessary to stop PennDot from using an illegal method of the selection of bidders and no harm can come to PennDot by requiring it to comply with the law. There being no material issues of fact, Brayman's motion for summary judgment seeking a permanent injunction is granted.

## ORDER

AND NOW, this 5th day of October, 2011, the motion for summary judgment seeking a permanent injunction filed by Brayman Construction Corporation and Stephen M. Muck is granted.