# Fayette County Office of Planning, Zoning and Community Development v. Cellurale

*John S. Cupp,* for plaintiff.
*David F. Toal,* for defendant.

LESKINEN, *J.,* October 22, 2007—This matter comes before the court on defendant's preliminary objections. Because there appears to be justifiable confusion about how zoning enforcement should be conducted, the court writes at length to clarify what can and cannot be done.

This case started out with a zoning "enforcement notice" issued by the plaintiff zoning authority, Fayette County. The original claims in the "enforcement notice" were essentially that defendant, Cellurale, (1) maintained "junk" items on his property that were not permitted in a "business" zone, (2) maintained signs that were not permitted, and (3) had erected a privacy fence without a permit. Evidently, Cellurale did not appeal the "enforcement notice" to the zoning hearing board, as was his right.

After the allotted time for corrective action under the "enforcement notice," Fayette County filed a "civil complaint" with the magisterial district judge. The citation specifically referenced "the two signs," and indicated that the signs had been removed, but that the "truck bed" (evidently used as part of the signage) still remained. The original civil complaint presented to the magisterial district judge contained no reference to the other violations listed in the "enforcement notice."

At the hearing, the magisterial district judge found no current violations and dismissed the complaint without prejudice to file a new complaint if violations of the "enforcement notice" recurred.

Fayette County then filed the within appeal of the magisterial district judge's decision. Fayette County asserts that the magisterial district judge was mistaken, and that the zoning violations were finally established when defendant failed to appeal the "enforcement notice" through the zoning hearing board, leaving the magisterial district judge with no discretion, and no decision to make, other than to impose an appropriate fine. (That argument is correct, but only in part—in order to impose a fine, the magisterial district judge would have to find— as a fact—that the violation continued after the time for curative action in the "enforcement notice" expired. Whether the violations listed in the "enforcement notice" were actual violations or not could not be relitigated before the magisterial district judge, but only before the zoning hearing board.)

On the other hand, counsel for Cellurale asserts that he cured the violations contained in the "enforcement notice" by moving the operable farm equipment onto his "agricultural" zoned land (where he asserts it is permitted under the ordinance), by removing all inoperable "junk" equipment, by removing the unpermitted signs, and by obtaining a permit for the fence—and that the magisterial district judge properly found no continuing violations at the time of the hearing. (The record does not establish whether or not the "truck bed" referenced in the civil complaint was removed or not, and in light of the court's disposition below, that finding was for the magisterial district judge alone to make.)

The preliminary objections filed by counsel for Cellurale assert that the zoning ordinance as authorized by the Municipalities Planning Code (MPC) does not allow

the plaintiff county to appeal an adverse decision in a civil zoning enforcement action brought before the magisterial district judge. Cellurale's preliminary objection is essentially that an appeal *by* the zoning authority is not allowed under the law, and the only appeal allowed is an appeal by the landowner *against* a decision made *in favor of* the zoning authority.

To understand why this is a legitimate argument requires some knowledge of the origins of zoning law. Zoning law is relatively recent, in existence in this country for less than a century. Zoning was first introduced in crowded American cities because of the clear dangers of fire, contaminated water, inadequate sewage, stench and disease.

"Zoning at first was considered one of the most radical departures from the traditional concepts of private property because it was perceived as prohibiting a citizen from devoting his property to a purpose useful and entirely harmless, in the ordinary sense, in certain districts in a community." *The Law of Zoning and Planning,* Rathkopf, 4th ed., vol. I., pp. 1-10.

The United States Supreme Court held zoning to be a valid exercise of a state's constitutional "police power" in the landmark case of *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). That decision justified zoning, in part, on the basis of the existing "law of nuisances," and the court stated:

"A regulatory zoning ordinance, which would be clearly valid as applied to the great cities, might be clearly invalid as applied to rural communities. . . . Thus, the question whether the power exists to forbid the erection of a building of a particular kind or for a particular

use, like the question whether a particular thing is a nuisance, is to be determined, not by an abstract consideration of the building or of the thing considered apart, but by considering it in connection with the circumstances and the locality. (citation omitted) *A nuisance may be merely the right thing in the wrong place—like a pig in the parlor instead of the barnyard.* If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control." 272 U.S. at 387-388. (emphasis supplied) (*The Law of Zoning and Planning,* Rathkopf, 4th ed., vol. I., pp. 1-10.).

Subsequently, the use of zoning expanded across the nation, and the proper subjects of zoning regulation expanded as well. As noted by Rathkopf:

"This further expansion in the lawful scope of the police power, in the context of land use regulation, is marked by the statement of the Supreme Court in the frequently cited case *Berman v. Parker* (citation omitted) (1954) that: 'The concept of the public welfare is broad and inconclusive. . . . The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled.' The statement of the court in *Village of Belle Terre v. Borras* (citation omitted) (1974), also reflects that: 'The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values and the blessings of quiet, seclusion and clean air make the area a sanctuary for people,' and to establish a 'quiet place,

where yards are wide, people few, and motor vehicles restricted.'" Rathkopf, *supra,* at pp. 1-12.

Zoning was intended to be inflexible (and therefore immune from political influence), with the permitted uses of a property finally determined by the specific "zone" in which it is situated. Unfortunately, it is impossible to remove politics from zoning—any time public officials have the power to control the use of private property, politics are inevitably part of the process. As a result, there remains a substantial minority position that believes that *any* zoning is an unreasonable restriction on the rights of private property owners.

In fact, significant areas of the country (including the city of Houston, Texas) have *no* zoning, and landowners there can still do anything they want on their own property, so long as it is otherwise legal. In such areas, the only way to restrict the use of property is to buy the property.

Just as "zoning" is a relatively recent legal development throughout the country, zoning has only existed in Fayette County for less than 50 years. Many "conflicting" uses that were already legally in place when the zoning ordinance was passed or amended are still "conflicting" uses, and the zoning ordinance cannot outlaw uses that were legal when the ordinance was enacted (or amended). Outlawing an existing lawful land use would be a violation of the constitutional prohibition against "ex post facto" laws. Such pre-existing lawful uses are known in zoning law as "non-conforming uses." The name is deceptive, because the landowner has the absolute right to continue *(and reasonably expand)* the legal "non-conforming use" despite the provisions of a subsequent zoning ordinance or amendment.

"Non-conforming uses" are supposed to be *registered* under the zoning ordinance, to avoid disputes later as to whether or not it was actually a legal pre-existing use. However, in actual practice, many such uses were never registered. The failure to register a non-conforming use was generally not charged as a violation because the zoning enforcement officers knew which properties had legal pre-existing uses; and a short-staffed office only had time to process obvious violations of the ordinance. (Registration itself is suspect as an "ex post facto" law.) As time went on, however; between gradual changes (and expansions) in the use of a property, and successive amendments to the zoning ordinance (Fayette County's Zoning Ordinance has been amended at least 31 times since 1963); it gets to the point where no one really knows whether a particular use is a legal "non-conforming use" or a violation of the ordinance.

In the instant case, it appears that defendant operated an auto body shop for many years in an area not zoned for such use. After the conflict was noticed, much of defendant's property was rezoned. It appears that the rezoning may have occurred precisely because the auto body use had been in place for so many years. Could it have been a legal non-conforming use that just was never registered? In any event, the rezoning was challenged in court and upheld. The rezoning is beyond challenge now, just as the violations set forth in the "enforcement notice" are beyond challenge now.

Zoning law has developed a torturously intricate system for enforcement. Overall, the system is designed to give everyone involved notice and an opportunity to be heard (the hallmarks of constitutional "due process") before

punitive action can be taken. That is one of the reasons that section 616.1 of the MPC, 53 P.S. §10616.1, requires the issuance of an "enforcement notice" with an opportunity to contest the violation, *and an opportunity to cure the violation,* before a civil complaint can be filed.

Because zoning was an exercise of the "police power," it was natural to think that zoning law enforcement would be similar to enforcement of criminal laws. As a result, zoning violations were originally prosecuted as summary criminal offenses. As summary cases, the district justices had primary jurisdiction. Violations were punishable by up to 60 days in jail. As criminal cases, a verdict of "not guilty" was final, while a defendant could appeal a "guilty" verdict to the court of common pleas.

Prosecution of zoning violations as summary criminal offenses created problems, however. The burden of proof was "beyond a reasonable doubt," and the defendant had a whole panoply of criminal constitutional rights that did not seem to be appropriate in the context of societal control of the use of private property, especially where defendants rarely, if ever, went to jail anyway. (Parties to civil proceedings who disobey court orders can be sent to jail as a sanction for contempt, so criminal proceedings were not necessary even for that reason.)

As a result, the Pennsylvania Legislature amended the MPC on December 21, 1988, and converted enforcement proceedings from criminal proceedings to *civil* proceedings. Nevertheless, because zoning violations had always been criminal, and there were no other existing procedures for the district judges to follow, the appellate courts ruled that civil zoning enforcement actions should continue to follow criminal procedures.

"Under section 617.2 of the MPC, added by section 62 of the Act of December 21, 1988, P.L. 1329, 53 P.S. §10617.2, a zoning enforcement proceeding is now civil rather than criminal. However, the defendants in such proceeding are afforded the same protection as the criminal defendants under the Pennsylvania Rules of Criminal Procedure. *Commonwealth v. Harchelroad,* 154 Pa. Commw. 259, 623 A.2d 878 (1993), *appeal denied,* 535 Pa. 649, 633 A.2d 153 (1993)." *Commonwealth v. Marcus,* 690 A.2d 842, 845 n.5 (Pa. Commw. 1997).

While the appellate courts have more recently recognized that criminal procedures are not necessary when a defendant cannot be sentenced to jail, *Township of Penn v. Seymour,* 708 A.2d 861 (Pa. Commw. 1998), the actual procedures used have been slow to change.

The above history shows why zoning enforcement proceedings—being of mixed parentage—can euphemistically be described as a "hybrid" between civil and criminal. This is the reason that Fayette County and Cellurale, the plaintiff and the defendant in this case, have some understandable confusion as to the procedures to follow. Civil cases can normally be appealed by either party, while summary criminal convictions can only be appealed by the defendant.

The specific question presented to the court by the parties is whether the zoning authority (Fayette County) can file an appeal to the court of common pleas after the magisterial district judge in a civil zoning enforcement action has found the defendant "not liable" for an alleged violation. (In the context of a civil enforcement proceeding, the use of the phrase "not guilty" is an obsolete

historical artifact.) This court finds that the answer to that question is "no."

The reason the zoning authority (Fayette County) cannot appeal the adverse decision of the magisterial district judge is *not* because of the "double jeopardy" protections of the Pennsylvania and United States Constitutions. Defendants in civil zoning enforcement actions are not entitled to any such protection against successive civil prosecutions for continuing or new violations.

In fact, the zoning authority has multiple options to enforce the zoning ordinance—it can proceed by a summary zoning enforcement action before the magisterial district judge pursuant to section 617.2 of the MPC, or— the zoning authority can obtain injunctive relief subject to the contempt powers of the common pleas court pursuant to section 617 of the MPC. It would appear that summary zoning enforcement actions before the magisterial district judge would be preferable in a relatively simple less-contested case, while an injunction action might be advantageous in a more complicated, more-contested case. Both methods can be used to address the same violations, and an injunction can be revisited with new contempt sanctions any number of times. Either way, it is clear that "double jeopardy" protections simply cannot apply.

The reason the zoning authority cannot appeal a "not liable" verdict from the magisterial district judge is set forth in the clear, unequivocal language of the statute:

"Section 617.2(a) (53 P.S.§10617.2(a))

"*No judgment* shall commence or be imposed, levied or payable *until the date of the determination of a viola-*

*tion by the district justice* [now 'magisterial district judge']."

There is no language in that statute providing for the court of common pleas to make an initial determination of a violation. (The court of common pleas has the power to "grant an order of stay, upon cause shown, tolling the per diem fine" under section 617.2(b) (53 P.S. §10617.2(b), but that is only *after* the magisterial district judge first finds a violation.) It may be true that the genesis of this provision lies in the obsolete criminal roots of zoning enforcement, and that the existing provision is the result of a legislative "error." Nevertheless, the court of common pleas only has the power to act (in zoning matters) where the legislature has granted that power. Enforcement proceedings, as opposed to injunction proceedings, have clearly been assigned to the minor judiciary.

It may also be instructive to note that counsel for Fayette County was unable to find even a single precedent where a zoning authority anywhere in Pennsylvania was permitted to appeal an adverse decision of the magisterial district judge. The fact that there are no reported cases where a zoning authority appeal has been permitted in more than 18 years (since enforcement was converted to civil) is strong evidence that the law does not allow it to be done.

In addition, the complaint filed in support of the "appeal" attempts to raise an issue—the presence of "junk" on the agricultural portion of the property—that was not raised in the civil complaint filed with the magisterial district judge. Under the clear language of the above-

cited statute, Fayette County cannot introduce issues in the common pleas court that were not first found to be violations by the magisterial district judge.

It is evident from the verdict below that the magisterial district judge believed that the sign violation contained in the civil complaint presented to him had been properly cured within the time allotted in the "enforcement notice." There is absolutely no authority in the MPC that would allow this court to overrule that factual determination, even in the presence of strong evidence to the contrary. (On the other hand, if the magisterial district judge found a violation, this court would have authority to review the factual determinations.) Even if this is a legislative "error," the common pleas court simply cannot act where the legislature has not delegated that power.

That does not prevent the zoning authority from filing new civil complaints if the zoning enforcement officers believe that there are new or continuing violations. The magisterial district judge's decision of "no violation" is final for alleged violations occurring up to the date the initial civil complaint was filed, but each subsequent day that a violation continues can be the subject of a new complaint. Moreover, as noted above, if the case is more complicated, an injunction proceeding under section 617, 53 P.S. §10617, directed directly to the common pleas court may be the most efficient method of resolving any continuing conflicts. (The magisterial district judge can only impose a $500 per day fine, but the common pleas court can put a defendant who deliberately violates an injunction in jail for contempt until the violation is cured.)

In any event, as noted above, there is no statutory basis for this court to act on Fayette County's "appeal" at this time. Therefore, this court enters the following:

## ORDER

And now, October 22, 2007, the preliminary objections filed by the defendant are hereby granted. Plaintiff's appeal is hereby denied and dismissed without prejudice.