# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Warwick Township             :
                                 :
        v.            :   No. 494 C.D. 2019
                                 :   Argued:  June 8, 2020
Jaime Winters and Jason Winters,   :
                 Appellants   :


**BEFORE:**    **HONORABLE MARY HANNAH LEAVITT,** President Judge
                 **HONORABLE RENÉE COHN JUBELIRER,** Judge
                 **HONORABLE ANNE E. COVEY,** Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**               **FILED:  October 29, 2020**

Jaime Winters and Jason Winters (collectively, the Winters), appeal from an Order of the Court of Common Pleas of Chester County (trial court) denying the Winters' Petition for Hearing on Remand for Attorney Fees (Petition) and awarding Warwick Township (Township) $31,027.04 in attorney fees following our opinion and order in *Warwick Township v. Winters* (Pa. Cmwlth., No. 2071 C.D. 2016, filed July 21, 2017), *petition for allowance of appeal denied*, (Pa., No. 567 MAL 2017, filed January 29, 2018) (*Winters I*).  In *Winters I*, we affirmed in part the trial court's order entering judgment in favor of the Township for the Winters' violation of the Township zoning ordinance (Ordinance) and vacated the trial court's order and remanded the matter for the trial court to recalculate the attorney fees due to the

Township pursuant to Section 617.2(a) of the Pennsylvania Municipalities Planning Code[1] (MPC). Section 617.2(a) provides in relevant part:

> Any person, partnership or corporation who or which has violated or permitted the violation of the provisions of any zoning ordinance enacted under this act or prior enabling laws shall, upon being found liable therefor[,] in a civil enforcement proceeding commenced by a municipality, pay a judgment of not more than $500 plus all court costs, including reasonable attorney fees incurred by a municipality as a result thereof. . . .

53 P.S. § 10617.2(a).

## I. Factual History

### A. *Winters I*

This contentious litigation arises from a dispute beginning in 2014 relating to the Winters' use of a two-story garage on their property. As we explained in *Winters I*:

> The Winters own property located at 423 Rock Run Road, Pottstown, Pennsylvania (property) but do not reside there. The property is located in the R-3 residential zoning district of the Township and contains a single-family dwelling which the Winters lease to a tenant, as well as a two-story "garage" that was renovated by a previous owner for the purpose of being used as a residence. . . .

> On January 29, 2014, Township Zoning Officer Joseph Boulanger (Officer Boulanger) mailed the Winters a "Violation and Cease and Desist Enforcement Notice" (Enforcement Notice)[] alleging that they were utilizing the detached garage on their property as a second dwelling in violation of the Ordinance. . . .

> . . . .

---

[1] Act of July 31, 1968, P.L. 805, *as amended*, added by Section 62 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10617.2(a).

2

The Winters did not appeal the Enforcement Notice to the Township Zoning Hearing Board (ZHB), choosing to forego the associated costs of an appeal, and instead directly contacted Officer Boulanger about the alleged violations. During those discussions, the Winters repeatedly denied using the garage as a dwelling and insisted that there was no violation that they could "cease and desist." . . .

On July 10, 2014, almost seven months after serving the Enforcement Notice, the Township filed an enforcement action in the magisterial district court seeking civil penalties and attorney fees. . . .

*Winters I*, slip op. at 2-4 (footnotes, citations, and emphasis omitted). With the Winters' permission, Officer Boulanger then visited the property and generated a Site Visit Report in which he concluded, based upon his observations, that the Enforcement Notice issued to the Winters was valid.

On October 13, 2014, the magisterial district judge [(MDJ)] entered a default judgment against the Winters for $648.50, consisting of a $500 fine plus $148.50 in fees and costs. However, because the judgment failed to award reasonable attorney fees, on November 13, 2014, the Township appealed.

In December 2014, the Township filed a complaint, later amended, seeking an amount of $500, plus costs and attorney[] fees, including at least $4,783 incurred on the hearing before the [MDJ] . . . and all reasonable attorney[] fees incurred in pursuing this appeal. . . . In response, the Winters filed an Answer, New Matter and Counterclaim, denying that the garage was used as a second dwelling, alleging that the enforcement action was the result of personal animosity and seeking judgment in their favor, legal costs and fees, as well as emotional and punitive damages[2]. . . . Following preliminary objections by the Township and responses thereto, . . . the trial court sustained those objections and dismissed the Winters' New Matter and Counterclaim without prejudice to replead . . . .

The Winters then filed an Amended New Matter and Amended Counterclaim, contending that the Township's enforcement action is

_____

[2] This Court noted that the Winters did not raise claims related to bad faith or the high costs for appealing the enforcement action. *See Winters I*, slip op. at 7 n.4.

unenforceable and not effective, . . . and that the enforcement action was the result of personal animosity. . . . Following another round of preliminary objections and responses, . . . the trial court entered an order sustaining the objections and dismissing the Amended New Matter and Amended Counterclaim. The trial court noted:

> . . . [O]nce a landowner has been given notice of a zoning violation pursuant to the [MPC], that landowner can only contest the asserted violations by way of an appeal to the municipality's zoning hearing board. [The Winters] failed to appeal the [Enforcement Notice] to the [ZHB]. . . .
>
> On April 28, 2016, the trial court held a de novo hearing because the Winters refused to stipulate to limiting the de novo appeal to whether the Township was entitled to attorney fees incurred in prosecuting this matter over the past two years, two months, and thirty days. . . .

*Id.* at 6-8 (footnotes, internal quotations, and citations omitted). At the trial, there was testimony regarding whether the Winters were actually in violation of the Ordinance. Township Solicitor also testified regarding the attorney fees up to the date of the de novo trial, and the parties stipulated that the time billed and fees incurred up to that point were true and accurate. (Reproduced Record (R.R.) at 169a.)

> On July 19, 2016, the trial court issued a verdict against the Winters for an amount totaling $19,651.49, consisting of a $500 fine, $148.50 in filing fees as well as $19,002.99 in attorney fees.[] Shortly thereafter, the Winters filed post-trial motions for a new trial and/or a Judgment [notwithstanding the verdict] and/or limit the amount of attorney fees . . . .

*Winters I*, slip op. at 10 (footnote, internal quotations, and citations omitted).

In its initial response to the Winters' post-trial motions, the Township included facts and evidence not of record, specifically what were alleged to be meeting minutes from a Township Board of Supervisors (Board) meeting in

September 2016 (Meeting Minutes), which contained a statement purportedly made by Jason Winters while presenting a subdivision plan that the garage "is occupied and the building has water and sewage." (R.R. at 657a.) Upon the Winters' motion, the trial court struck this evidence from the record and sealed the response because, although the Township referred to it as "after-discovered" evidence, it did not meet the requirements to be considered after-discovered evidence. The trial court ordered the Township to file a new response without the offending evidence, which the Township did. The Winters then filed a Motion for Sanctions, asserting that the minutes officially approved by the Board were different than those attached to the Township's response. The trial court granted the Motion for Sanctions, ordering the Township to reimburse the Winters for reasonable attorney fees resulting from the improper pleading. (Record Item No. 36.) Upon consideration of the post-trial motions and amended response, the trial court denied the Winters' post-trial motions.

The Winters appealed to this Court, arguing that: the Enforcement Notice was defective; the trial court abused its discretion by imposing a one-day fine for the violation of the Ordinance because it was contrary to the weight of the evidence; and the trial court erred in awarding attorney fees when the Township took the appeal only to collect attorney fees that were incurred up to the time of the de novo trial. We affirmed the trial court in part, reasoning that the Enforcement Notice complied[3] with the necessary requirements of Section 616.1(c) of the MPC, 53 P.S.

---

[3] Although agreeing with the majority that the Winters' failure to appeal the Enforcement Notice to the ZHB precluded them from challenging whether there was a violation, the undersigned wrote separately with regard to the second issue, finding that the Enforcement Notice was ambiguous about whether timely compliance with its terms would still subject the Winters to enforcement remedies. *See Winters I*, (Cohn Jubelirer, J., concurring).

5

§ 10616.1(c).[4] *Winters I*, slip op. at 13. Further, because the Winters did not appeal the Enforcement Notice, we held there was a conclusive determination that the Winters used the garage in violation of the Ordinance and evidence at the de novo trial showed this impermissible use continued; therefore, we affirmed on the second issue, as well. *Id.* at 15.

With regard to the attorney fees issue, however, we explained

[a]lthough a township or municipality is entitled to attorney fees incurred on appeal, *see* [*Borough of Bradford Woods v.*] *Platts*, 799 A.2d [984,] 991 [(Pa. Cmwlth. 2002)], what complicates this matter is that a de novo appeal was made by the Township for the collection of fees that should have been awarded by the [MDJ]. Notwithstanding, the appeal involved more than the recoupment of fees because the Winters refused to stipulate to a hearing solely on that issue and, instead, made numerous filings challenging the validity of the enforcement proceeding. Accordingly, the issue is when can attorney fees resulting from an appeal for attorney fees constitute "costs and attorney fees incurred as a result of the violation." *See Platts*, 799 A.2d at 991; *see also* 53 P.S. § 10617.2(a).

If, at the outset of the appeal, the parties stipulated to limit the trial court's hearing to the collection of attorney fees, it would be clear that any costs advanced by the Township would not be borne by the Winters because the appeal was not for the enforcement of a zoning violation. Notwithstanding, once the Winters refused to stipulate to the scope of the appeal and challenged the entire enforcement action, the Township was stuck with having to present the merits of the case at the de novo hearing.

The Winters also challenge any fees awarded for pursuit of fees incurred in enforcing the violations regarding the [Uniform Construction Code, 34 Pa. Code §§ 401.1-405.42, (]UCC[)]. Because, under Section 617.2(a) of the MPC, attorney fees can only be awarded for enforcement proceedings brought to enforce provisions of a zoning code, to the extent that any fees were awarded to enforce provisions of the UCC, those fees are improper.

---

[4] Section 616.1 was added by Section 60 of the Act of December 21, 1988, P.L. 1329.

Given all of the above, we affirm in part the trial court's order, but vacate that portion of the order awarding the Township attorney fees and costs. Accordingly, we remand to the trial court with instruction to recalculate the amount of attorney fees and costs that the Township incurred as a result of the Winters' zoning violation, excluding those fees expended solely for the purpose of collecting attorney fees or prosecuting alleged UCC Violations.

*Winters I*, slip op. at 16-18. The Winters filed a petition for allowance of appeal, to which the Township filed a no-answer letter, and which the Supreme Court denied.

B. *Remand before the Trial Court*

On remand, the Winters filed their Petition, asserting that evidence discovered after the de novo trial and during the appeal process demonstrated the Township submitted false evidence and prosecuted its claims in bad faith and, therefore, the fees associated with that conduct are not reasonable. By Order dated May 31, 2018, the trial court issued upon the Township a rule to show cause why the Winters were not entitled to the requested relief.

The Township filed an answer to the Petition, specifically denying that the Township acted in bad faith and asserting that, pursuant to *Winters I*, the Township's attorney fees incurred in litigation before three separate courts on the merits of the Enforcement Notice were reasonable. The Township provided a Detail Transaction List of its attorney fees, which it had highlighted to illustrate which entries it believed should be excluded pursuant to this Court's Order in *Winters I*. The total amount of attorney fees claimed by the Township totaled $31,027.04. Among the items that the Township excluded from its request for attorney fees were entries related to UCC violations and entries related to the preparation and filing of the Township's improper response to post-trial motions.

7

Pursuant to an order permitting depositions, the Winters deposed the Secretary of the Township Board of Supervisors (Board Secretary), the Chairman of the Township Board of Supervisors (Board Chairman), and Township Solicitor. Board Secretary testified that she provided to Township Solicitor the Meeting Minutes that were included in the Township's initial response to the Winters' post-trial motions but not for the purpose of using them in court. The Meeting Minutes provided to Township Solicitor reported that Jason Winters, while presenting a subdivision plan, made the statement that the garage was occupied and had water and sewage. However, this was **an error** by Board Secretary, she explained, and at the **Board's request**, that statement was **removed** from the official meeting minutes that were later approved. (R.R. at 558a-59a.) Board Secretary noted that the minutes that were approved contained a statement by Jason Winters that the garage has water and sewage. When asked about certain entries on the Detail Transaction List, such as a telephone conference between her and an attorney after the de novo trial, Board Secretary explained she frequently speaks with Township Solicitor to keep the Board up to date. According to Board Secretary, the present enforcement action was unusual from typical enforcement actions because of the time it took for inspection, the counterclaims, and the appeals.

Board Chairman testified that the initial complaint regarding the Winters' Ordinance violation was made by **the Winters' neighbor**, who is a **member of the ZHB**, and who was **involved in separate litigation** with the Winters. Board Chairman stated he was aware that **the Winters prevailed** in the separate litigation with their neighbor, but Board Chairman did not find it suspicious that the Winters' neighbor complained of the Winters' zoning violation right after the Winters prevailed in separate litigation. (*Id.* at 674a-75a.) Board Chairman agreed that the

8

Meeting Minutes submitted with the initial response to the post-trial motions had not yet been approved by the Board and were incorrect. Specifically, Board Chairman noted that the Meeting Minutes included a statement by Jason Winters that the garage was occupied and had water and sewage, but Jason Winters **did not say** it was occupied at the meeting. Board Chairman did not know why there was a misunderstanding by Board Secretary about what had been said at the meeting. Board Chairman did not recall authorizing counsel to submit the Meeting Minutes to the trial court, but acknowledged that the officially adopted minutes from that meeting did **not** contain a statement by Jason Winters that the garage was occupied.

Board Chairman's understanding of the appeal to the trial court from the MDJ was to recover the attorney fees expended, which, at that time, were $4783. Board Chairman occasionally received updates on the case from Township Solicitor. In Board Chairman's opinion, "[i]t doesn't seem like [it] makes sense" to expend at least $31,027.04 for the recovery of $4783 in legal fees. (*Id.* at 679a.) However, Board Chairman did not think it was fair that the Township should pay the attorney fees in light of a statutory requirement for the Winters to pay such fees.

Township Solicitor also testified. With regard to certain entries on the Detail Transaction List, Township Solicitor testified he did not think it was unreasonable to spend a half an hour on a telephone conference with Board Secretary in preparation for citations by a zoning officer. With regard to other entries, Township Solicitor did not believe it was duplicative to have various attorneys assigned to the case who would bill for their review of certain matters. Township Solicitor agreed that the MDJ hearing related to zoning violations and UCC violations, but Township Solicitor did not spend much of the time billed discussing the UCC violations at the MDJ hearing because the MDJ determined it lacked jurisdiction over them.

9

Township Solicitor did not recall another time when the Township appealed its own victory to a trial court or when the MDJ did not award statutorily mandated attorney fees. Township Solicitor "wouldn't characterize any aspect of this case as typical," and "[i]n that respect[, he did not] find the time entries to be unreasonable." (*Id.* at 617a.) Further, Township Solicitor did not find it unreasonable for the Winters to pay for his conference calls with Township administration to keep it informed of what was happening in the case, particularly given that the Township was billed at a lower hourly rate than most clients. Nor did Township Solicitor think the fees were unreasonable when compared to his standard billable rate. (*Id.* at 617a.) Township Solicitor did not file for judgment on the pleadings before the trial court from a strategic standpoint, citing his experience that the trial court does not typically grant such motions and a concern that there would likely be a remand for further factual findings.

With regard to the Meeting Minutes struck from the record by the trial court, Township Solicitor stated he had reviewed the Township's response to post-trial motions that contained these draft minutes, but could not recall if he reviewed the Township's response to post-trial motions prior to when it was filed. Township Solicitor agreed that pleadings with facts not of record should be endorsed with a verification. Township Solicitor stated he believed a verification was not provided with the Township's response to post-trial motions because the facts alleged in the Meeting Minutes were asserted in a public meeting. However, Township Solicitor himself did not draft Township's post-trial motion response. Township Solicitor acknowledged that the Meeting Minutes included a statement by Jason Winters that the garage was occupied and had water and sewage, and that the official minutes approved by the Board do not include a statement by Jason Winters that the garage

10

was occupied. Township Solicitor was neither present at the September 2016 meeting nor at the meeting where the minutes were adopted so he could not recall why the official meeting minutes were revised to delete the statement in question.

With regard to time billed for work before the Commonwealth Court, Township Solicitor "view[ed] all of this as stemming from a notice of violation for a zoning matter three years prior," and "the only reason [the Township] w[as] in the Commonwealth Court was because of the appeal by the Winters"; therefore, it was fair to charge the Winters for the same. (*Id.* at 621a.) According to Township Solicitor, the Detail Transaction List represents only what was billed after Township Solicitor reviewed the ledger and wrote off any time. Township Solicitor testified there were various instances where he would bill less than the minimum billing requirements for work he did for the Township. Township Solicitor acknowledged that he was aware the Winters had been engaged in separate litigation with their neighbor who first complained of the zoning violation, and that the Winters prevailed in this litigation. Township Solicitor stated he did not recall any other individuals complaining about the Winters' use of their garage other than the Winters' neighbor. Township Solicitor did not recall whether the Winters' neighbor was on the ZHB.

Township Solicitor also testified regarding a 2017 email exchange between himself and a representative at the Chester County Health Department (Health Department) in which Township Solicitor indicated the 2013 inspection by Officer Boulanger revealed the existence of a sewage holding tank and determined there may be illegal pumping from the tank. The Health Department representative responded that the sewage holding tank on the Winters' property could not be used and was observed not to be in use in April 2013 such that it warranted legal action

11

by the Health Department. (*Id.* at 638a.) Township Solicitor acknowledged that the representative made this statement, but disagreed that the statement established whether the garage on the property was occupied.[5]

Following the depositions, the parties provided briefs to the trial court in support of their respective positions, including therein the deposition transcripts and the Detail Transaction List. The Winters challenged the reasonableness of the Township's fees on the basis that the Township exhibited bad faith in prosecuting the enforcement action and sought fees unrelated to enforcement. The Winters contended that despite the Township's redaction of entries explicitly mentioning the UCC or which, "in its subjective determination, can be attributed to the pursuit of attorney[] fees," there were remaining entries related to the pursuit of attorney fees and entries unrelated to the enforcement of the zoning violation. (*Id.* at 422a.) The Winters also specifically challenged fees on the Detail Transaction List for: anything after the Township's submission of the no-answer letter to the Supreme Court; entries related to the Township's communications with the Health Department; three specific time entries from February and November 2015 relating to research and drafting a memorandum email regarding attorney fees; the time during which Township Solicitor prepared for and appeared at trial in the capacity of a fact witness on the attorney fees issue; review of the Winters' subdivision application after the de novo trial; preparation of the Township's brief before the Commonwealth Court; and correspondence and phone calls to the Health Department following the de novo trial. (*Id.* at 422a-25a.) The trial court held oral argument on the Petition.

_____

[5] Board Secretary and Board Chairman were also questioned about this communication between Township Solicitor and the Health Department, but they did not recall anything about that communication.

12

*C. Order and Rule 1925(a) Opinion*

On March 26, 2019, the trial court issued its Order denying the Petition and awarding the Township $31,027.04 in attorney fees. The trial court found this award of attorney fees excluded any fees expended for the purpose of collecting attorney fees or prosecuting UCC violations. The trial court reasoned that the Winters did not meet their burden on the rule to show cause. (Order at 1 n.2.) In its Order, it explained that the Winters claimed to have "newly-discovered evidence demonstrating the Township's bad faith." (*Id.*) However, it believed that this evidence was "directly in contravention" of the trial court's prior order striking the Meeting Minutes from the record at the Winters' request. (*Id.*) Therefore, the trial court reasoned it "w[ould] not consider the after-discovered evidence." (*Id.*) Further, because the Winters would not stipulate to the scope of the appeal before the trial court the first time, the trial court determined the Township was entitled to "fees incurred in litigating the zoning violation before three separate courts," as it "defend[ed] against the Winters' meritless counter[ ]claims in the [trial court], along with the Winters' appeal to the Commonwealth Court, and the Winters' request for [allowance of appeal] in the Pennsylvania Supreme Court." (*Id.* at 1 n.2.)

The Winters appealed and, at the trial court's direction, filed a statement of errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(b), asserting the trial court erred and abused its discretion in finding the Winters failed to carry their burden, in refusing to consider the Winters' evidence and arguments, and in granting the amount of attorney fees the Township requested because such fees were unreasonable, incurred in bad faith, and contained services unrelated to the enforcement of the zoning violations.

In its opinion issued pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure (Rule 1925(a) Opinion), the trial court rejected the Winters' issues on appeal. "After considering both the Winters' Petition and the Township's [r]esponse thereto along with all of the relevant deposition testimony," the trial court reasoned it properly determined the Winters "failed to prove the Township's attorney[] fees were incurred in bad faith." (Rule 1925(a) Opinion (Op.) at 5.) The trial court acknowledged that while the $500 fine for the single-day violation was small in comparison to the amount of attorney fees and that factor had to be considered, that "factor, alone, is not dispositive." (*Id.*) Considering the discounted rate at which the Township was billed for four and one-half years of litigation, through three levels of review, the trial court determined "the attorney[] fees awarded are reasonable and commensurate with the services the Township's attorneys[] provided," and the Winters failed to prove bad faith indicating otherwise. (*Id.*) Because the Township had to "relitigate the same zoning violation case against the Winters on multiple occasions," the trial court reasoned it was "disingenuous for the Winters[] to contend that the statutorily mandated attorney[] fees in this matter are unreasonable." (*Id.* at 9.) Taking this Court's instructions in *Winters I* to recalculate the attorney fees, the trial court determined that it properly applied its discretion to award attorney fees with the exception of those detailed by the Township as relating to pursuit of UCC violations or attorney fees.

The trial court also disagreed that it erred or abused its discretion in not considering the Winters' evidence. The trial court noted that its "review of the record fail[ed] to establish that the Township acted in bad faith in prosecuting" the now conclusively established violation, which had become the law of the case. (*Id.* at 5.) The trial court explained that while it initially refused to consider "the merits

14

of [the] Township's after-discovered evidence," which it believed "inured to the benefit of the Winters," the trial court found that it was now constrained by the filing of an appeal to consider that evidence. (*Id.* at 5.) On the one hand, the trial court determined the after-discovered evidence only further corroborated the underlying violation. Specifically, the trial court noted that the Meeting Minutes contained an admission against interest by Jason Winters about the use of the property. On the other hand, the trial court noted the Board Secretary and Board Chairman testified that the statement was never made and the Meeting Minutes were incorrect. Ultimately, the trial court determined that this incident did "not provide insight into the motivations of the Township" and the Township prevailed in the litigation without consideration of this evidence. (*Id.* at 6 n.8.) The trial court had already imposed monetary sanctions against the Township for including the Meeting Minutes in its response to the post-trial motions and, therefore, the trial court stated it would not have reduced the award of attorney fees. The trial court further stated that to the extent that "the Township mistakenly relied upon the Draft Meeting Minutes in its post-trial response," the trial court could not "impute a nefarious motive to the Township's prosecution of this case on this fact[] alone." (*Id.*) Ultimately, the trial court determined "the attorney[] fees incurred by the Township are the direct result of the Winters['] litigation[] strategy after failing to remedy the violations at issue or timely appeal the [Enforcement Notice], not the Township's bad faith.[]" (*Id.* (footnote omitted).)

15

## II. Arguments

### A. *The Winters' Arguments*

On appeal, the Winters present a number of arguments. The Winters contend that neither the trial court nor this Court is bound by the law of the case doctrine in the present case. The law of the case doctrine does not apply where a prior appellate decision is based on "palpably erroneous facts." (Winters' Brief (Br.) at 18 (quoting *In re Reamer's Estate*, 200 A. 35, 37 (Pa. 1938)).) Furthermore, they argue there is no prior determination as to what portion of attorney fees the Township seeks is attributable solely to the zoning enforcement.

Moreover, citing *Loganville Borough v. Godfrey*, 59 A.3d 1149, 1151 (Pa. Cmwlth. 2012), the Winters argue that the word "shall" in Section 617.2(a) when further qualified, as it is here by the term "reasonable," is not a mandatory directive, and, therefore, the Township's conduct should be reviewed for reasonableness. The discretion to award reasonable attorney fees was first exercised by the MDJ, who did not award attorney fees, which was the impetus for expending tens of thousands of dollars to recoup approximately $5000 in fees, which even Board Chairman did not think was reasonable.[6]

---

[6] The Winters raised for the first time at argument before this Court the contention that Township should not have been able to appeal the MDJ's judgment in its favor in order to seek attorney fees before the trial court. Relying upon a decision from the Court of Common Pleas of Fayette County, *Fayette County Office of Planning, Zoning & Community Development v. Cellurale*, 2 Pa. D. & C. 5th 104 (2007), the Winters contend that this Court should dismiss this action for lack of subject matter jurisdiction because the Township could not appeal the MDJ's decision in its favor. This argument goes to the threshold question of subject matter jurisdiction, which can be raised at any time by either the parties or the Court. *Seitel Data, Ltd. v. Center Township*, 92 A.3d 851, 859 (Pa. Cmwlth. 2014). However, we find *Cellurale* distinguishable. The Court of Common Pleas of Fayette County determined that a municipality could not appeal an MDJ determination that the listed violations in an enforcement notice were cured, relying upon the fact that zoning violations originated as summary criminal offenses from which the Commonwealth could not appeal a finding of not guilty. 2 Pa. D. & C. 5th at 111, 114. This is **(Footnote continued on next page…)**

16

The Winters claim the trial court erred because the Township exhibited bad faith in prosecuting the enforcement action and in its acts post-trial, demonstrating that the attorney fees incurred as a result thereof have not been reasonable. The act of including the Meeting Minutes in the Township's response to post-trial motions **without a verification**, when those Minutes were not correct, demonstrates bad faith in the form of falsifying a public document. Further, they argue the Township "attempt[ed] to rally separate and unrelated government entities against the Winters," as shown in the email exchange with the Health Department, indicating "bad faith and retaliatory prosecution." (Winters' Br. at 24.) The fees incurred by the Township were not what was contemplated by the General Assembly under Section 617.2(a) as the Township's fees are not "reasonable" in the legal or commonsense understanding of the word.

The Winters further assert the Township expended fees "pursuant to the Township's own decisions and strategy," rather than as a result of any action by the Winters, because it was the Township that appealed the judgment from the MDJ that was in its favor and participated in the de novo trial. (*Id.* at 28.) The trial court's characterization of this case by attributing the length and intensity of the litigation only to the Winters is "demonstrable fiction." (*Id.* at 30.)

Finally, the Winters argue that the trial court disregarded their evidence when it issued the Order and augmented the Order by addressing the Meeting Minutes only in its Rule 1925(a) Opinion. The Winters moved for the Meeting Minutes to be considered in remand proceedings, the trial court issued a rule to show cause, the parties developed the record on remand, and the trial court subsequently erred in refusing to consider the Winters' evidence of the Township's alleged bad faith. By

not the case here, where the Township did not appeal the merits but appealed because the MDJ did not award it the statutorily mandated attorney fees.

17

addressing the Winters' evidence only in the Rule 1925(a) Opinion, the trial court made contradictory findings and demonstrated a bias for the Township necessitating remand. Due process required that the Winters be given an opportunity to be heard, which the trial court denied them by "refusing to consider the evidence and arguments of their submission." (*Id.* at 34.)

### B. *The Township's Arguments*

The Township responds that this Court ordered that the Township is entitled to recover fees for the amounts expended when it was required to relitigate and prove its substantive case. Because the Winters have continually challenged the substance of the Enforcement Notice, the Township is entitled to recover most of its attorney fees under the mandatory provisions of Section 617.2(a). The Winters challenged the merits of the Enforcement Notice at every level of litigation. Because the Winters' pursuit of the merits required the Township to prove its case before the MDJ and trial court, and then defend the weight-of-the-evidence challenge in this Court and the petition for allowance of appeal to the Supreme Court, the Township contends the total recoverable fees are those ordered by the trial court.

The Township further argues that the Winters' bad faith argument is not premised on selective enforcement but rather an assertion of personal animosity and subjective intent of the prosecuting authorities, which is irrelevant to the enforcement decision. The Winters ignore that they were, according to the Township, using the garage as a dwelling in violation of the Ordinance. The Winters' argument that the attorney fees are unreasonable in comparison to the $500 award received by the Township fails for two reasons. First, the Township argues the Winters have increased the costs of litigation by filing counterclaims and taking successive appeals to challenge factual determinations. Second, the Township

contends the Winters' fine is only $500 because the Township exercised its discretion to pursue only a single-day violation rather than a continuing violation, which would make for a higher fine. Township Solicitor offered services at a reduced rate and sought to reduce the costs of litigation where possible, such as by filing a no-answer letter to the petition for allowance of appeal before the Supreme Court. Accordingly, the Township asserts its fees are reasonable and asks this Court to affirm.[7]

## III. Discussion

Section 617.2(a) provides in its entirety:

> Any person, partnership or corporation who or which has violated or permitted the violation of the provisions of any zoning ordinance enacted under this act or prior enabling laws shall, upon being found liable therefor[,] in a civil enforcement proceeding commenced by a municipality, pay a judgment of not more than $500 plus all court costs, **including reasonable attorney fees incurred by a municipality as a result thereof.** No judgment shall commence or be imposed, levied or payable until the date of the determination of a violation by the district justice.[8] If the defendant neither pays nor timely appeals the judgment, the municipality may enforce the judgment pursuant to the applicable rules of civil procedure. Each day that a violation continues shall constitute a separate violation, unless the district justice determining that there has been a violation further determines that there was a good faith basis for the person, partnership or corporation violating the

---

[7] The Township also seeks sanctions against the Winters for obdurate and vexatious conduct. Sanctions are warranted for vexatious conduct when "behavior is **wholly** unreasonable," *Sutch v. Roxborough Memorial Hospital*, 142 A.3d 38, 70 (Pa. Super. 2016), and suit is instituted "without sufficient grounds and serving only to cause annoyance," *Springfield Township, Bucks County Board of Supervisors v. Gonzales*, 632 A.2d 1353, 1356 (Pa. Cmwlth. 1993). When a party is "stubbornly persistent in wrongdoing," sanctions are warranted for obdurate conduct. *In re Estate of Burger*, 852 A.2d 385, 392 (Pa. Super. 2004). While we understand the Township's frustration, the Winters have had legal grounds for their arguments and actions throughout the process, and we do not find their behavior to be "wholly unreasonable." *Sutch*, 142 A.3d at 70. Therefore, sanctions are not warranted.

[8] District justices have since been renamed MDJs.

19

ordinance to have believed that there was no such violation, in which event there shall be deemed to have been only one such violation until the fifth day following the date of the determination of a violation by the district justice and thereafter each day that a violation continues shall constitute a separate violation. All judgments, costs and reasonable attorney fees collected for the violation of zoning ordinances shall be paid over to the municipality whose ordinance has been violated.

53 P.S. § 10617.2(a) (emphasis added). As this Court reiterated in *Winters I*, an award for attorney fees and costs under Section 617.2(a) is "not limited to costs and fees incurred as a result of the action before the [MDJ] but includes all costs and attorney fees incurred as a result of the violation, which may encompass appeals from the enforcement notice." *Platts*, 799 A.2d at 991. Our Supreme Court has set forth factors to be considered in determining reasonableness of attorney fees, including:

> [T]he amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

*In re LaRocca's Tr. Estate*, 246 A.2d 337, 339 (Pa. 1968). Attorney fees awarded under Section 617.2(a) "may be deemed 'reasonable' despite a lack of proportionality with the ultimate fine imposed on the violator of the zoning ordinance." *Platts*, 799 A.2d at 992. "Once the prevailing party has established the relatedness of the claims[,] it is the opposing party's 'burden to establish a basis for

20

segregating the hours spent on successful and unsuccessful claims.'" *Township of South Whitehall v. Karoly*, 891 A.2d 780, 786 (Pa. Cmwlth. 2006).

> When reviewing the award of reasonable attorney fees, we are cognizant that
>
> > as long as the trial court reviews the record and considers factors such as the nature and length of the litigation, the responsibilities of the parties in affecting the nature and length of the litigation, and the competitiveness of the rate and time expended, it is difficult for an appellate court to hold that a trial court abused its discretion in issuing a particular award of attorney[] fees.

*Arches Condo. Ass'n v. Robinson*, 131 A.3d 122, 132-33 (Pa. Cmwlth. 2015). This Court "may not reweigh evidence or make credibility determinations" when reviewing a trial court's order. *Spencer v. City of Reading Charter Bd.*, 97 A.3d 834, 842 (Pa. Cmwlth. 2014). However, if the trial court as factfinder capriciously disregards evidence, meaning it "willful[ly] and deliberate[ly] disregard[s] [] competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result," we may overturn its determinations. *Id.* (quoting *Arena v. Packaging Sys. Corp.*, 507 A.2d 18, 20 (Pa. 1986)).

We are aware that the case before us is not typical. These parties have engaged in contentious litigation for many years, including three appeals after the MDJ proceeding, a remand, and now the present appeal. The unusual nature of this litigation is evidenced by the amount of attorney fees awarded, $31,027.04, encompassing fees beginning at the MDJ level in 2014 and all stemming from a violation that warranted only a $500 fine. The Winters contend that the trial court excluded "in toto" the evidence the Winters presented on remand. (Winters' Br. at 26.) Upon our review, we agree with the Winters that the trial court abused its discretion by "willful[ly] and deliberate[ly] disregard[ing] [] competent testimony

21

and relevant evidence which one of ordinary intelligence could not have avoided in reaching a result." *Spencer*, 97 A.3d at 842 (quotation omitted).

On remand, the Winters asserted that the Township's attorney fees are unreasonable because of the Township's bad faith throughout the proceedings for prosecution of the Enforcement Notice. As evidence, the Winters cited the Meeting Minutes, which a number of witnesses acknowledged were inaccurate during their depositions on remand. Specifically, the Winters emphasized Board Secretary's testimony that she provided Township Solicitor with the Meeting Minutes that contained a statement allegedly made by Jason Winters that the garage was occupied, which was an error. Had Jason Winters made this statement, it would have directly contradicted the Winters' position in this litigation, which has consistently been that the garage was not used as a residence. The Winters also pointed to the testimony of Board Chairman, who testified that the Meeting Minutes submitted with the Township's response to post-trial motions had not yet been approved by the Board and were incorrect because they contained the statement by Jason Winters regarding the garage being occupied although Jason Winters **did not say that at the meeting**. Finally, the Winters relied upon the testimony of Township Solicitor who, although testifying he did not recall if he reviewed the Township's response to post-trial motions before it was filed and he did not draft the document, agreed that pleadings with facts not of record should be endorsed with a verification. Township Solicitor stated that the Meeting Minutes included a statement made by Jason Winters that did not appear in the official minutes approved by the Board. In addition to the Meeting Minutes, the Winters presented testimony that the Winters' neighbor, who was a member of the ZHB, had a separate dispute with the Winters

22

and initiated the complaint regarding the Winters' use of the garage only after the Winters prevailed against the neighbor in the separate litigation.

Despite all of the evidence that the Winters presented related to the Township's alleged bad faith in prosecuting the violation, the trial court stated in its Order awarding the attorney fees that it "[w]**ould not consider** the after-discovered evidence in this proceeding." (Order at 1 n.2 (emphasis added).) The trial court's decision to entirely disregard this evidence is an abuse of discretion, particularly where the Meeting Minutes that were submitted to the Court contained what would have been an admission against interest by Jason Winters that went to the heart of the underlying violation, as it purported that Jason Winters admitted the garage was occupied. The fact that it was revealed on remand that **this statement was never made** but the Meeting Minutes were nonetheless **submitted to the trial court**, and without a verification, is cause for concern.[9] This testimony, at the very least, raises questions about the Township's good faith in initiating and prosecuting the enforcement action.

The evidence that the trial court refused to consider related to the Township's actions in filing the response to post-trial motions with the incorrect and unofficial Meeting Minutes after it had already secured a judgment in its favor. Although the Winters did not stipulate to limiting the scope of the appeal to just attorney fees and the trial court allowed evidence on the merits of the violation, the trial court reached the same conclusion as the MDJ: that the Winters had not timely appealed the Enforcement Notice and, therefore, the violation was conclusively established. Thus, by the time the Winters and the Township were litigating post-trial motions before the trial court, the only relevant inquiries should have been (1) the Winters'

---

[9] We note that these Meeting Minutes sealed by the trial court appear in the original record that was before this Court in *Winters I* and in the present case.

23

lack of appeal of the Enforcement Notice; and (2) the attorney fees statutorily owed to the Township because the violation was conclusively established. The facts of the underlying violation itself and the statements allegedly made by Jason Winters in the Meeting Minutes were no longer relevant because the trial court had already concluded the violation resulted from the Winters' failure to appeal. Even if the Township determined it was necessary to address the underlying violation in its response to post-trial motions because the Winters had presented evidence of the same during the trial, it is unclear why the Township supported its position with the Meeting Minutes, that indisputably were not of record and were incorrect on the issue that formed the basis for the underlying violation that spurred this entire litigation. Further, on remand, the Winters presented evidence indicating that the Township inquired into the use of the property, specifically the sewer holding tank on the property, with the Health Department in 2017, which was **after** the trial court already concluded that the violation was conclusively established because of the Winters' failure to appeal.

Although, with regard to the Meeting Minutes, the trial court sealed the Township's response to post-trial motions and sanctioned the Township for its response, for the reasons stated above, the deposition testimony developed on remand raises concerns about the good faith of the Township. Upon remand, the trial court permitted the parties to engage in further discovery related to attorney fees. Therefore, this evidence was properly before the trial court on remand, and the trial court nonetheless stated it would not consider the Winters' "newly-discovered evidence demonstrating the Township's bad faith in prosecuting this case" because it was "directly in contravention of [the trial c]ourt's [o]rder specifically addressing the after-discovered evidence proposed by the Township." (Order at 1 n.2.) The

24

trial court further stated it found "that the Winters' claim that the Township prosecuted this action in bad faith [to be] self-serving and in opposition to the trial [c]ourt's prior rulings." (*Id.*) It appears the trial court reasoned that because it struck and sealed the Township's response to post-trial motions, which included the Meeting Minutes, the Winters could not use related evidence upon remand to challenge the reasonableness of attorney fees. However, the trial court did not appreciate that the Winters did not rely upon the "after-discovered evidence" and the deposition testimony related to same for any reason other than to demonstrate the Township's bad faith in prosecuting the action and to show the unreasonableness of the attorney fees. Because the trial court did not appreciate the purpose of the evidence presented on remand raising concerns about the Township's good faith, the trial court "deliberate[ly] disregard[ed] [] competent testimony and relevant evidence which one of ordinary intelligence could not have avoided in reaching a result." *Spencer*, 97 A.3d at 842 (quotation omitted). Moreover, the trial court did not appear to consider in its entirety the Winters' evidence regarding the initiation of the zoning complaint by a neighbor who was a member of the ZHB and involved in a separate dispute with the Winters. This evidence was relevant to the Winters' arguments on remand that the Township initiated and prosecuted the underlying enforcement action in bad faith from the beginning, and so relevant to the determination of which fees were reasonable. Yet, the trial court did not consider any of this evidence, despite its relevance to the question of the Township's good faith in prosecuting the enforcement throughout the course of this litigation. Accordingly, the trial court abused its discretion when it issued the Order denying the Petition. We emphasize in reaching this conclusion that we do not make a finding as to whether the Township did, in fact, exhibit bad faith in prosecuting the

25

action. We determine only that the Winters presented evidence on remand raising an issue as to the Township's bad faith and it was an abuse of discretion for the trial court not to consider that evidence at all when it issued the Order and denied the Petition.

The trial court's subsequent consideration of this evidence in its Rule 1925(a) Opinion does not cure the error. In its Rule 1925(a) Opinion, the trial court acknowledged that it previously "declined to consider the Winter[s'] 'newly discovered evidence' on the merits, [but it was] now constrained by the filing of this appeal to do so." (Rule 1925(a) Op. at 6.) The trial court then stated that the Meeting Minutes presented by the Township "would have only further **corroborated** the Verdict, namely that **the Winters were using their garage as a dwelling** and office in violation of the Zoning Ordinance" and that this "evidence appears to be **adverse** to the Winters['] position." (*Id.* (emphasis added).) The trial court elaborated in a footnote that the Meeting Minutes "**if true** constitute[] an admission against the Winters' interest." (*Id.* at n.8 (emphasis added).) However, as demonstrated by the testimony evidence presented on remand, the Meeting Minutes were **not correct**. While the trial court also acknowledged this in its Rule 1925(a) Opinion, recounting that Board Chairman and Board Secretary testified in depositions that the Meeting Minutes filed with the Township's response to post-trial motions were "incorrect" and "later amended," it nonetheless determined that the Winters' evidence did not demonstrate bad faith. (*Id.*) This conclusion, therefore, is premised upon a contradiction that the Meeting Minutes, which were admittedly untrue, would nonetheless corroborate that the garage was being used as a dwelling and be an admission against interest. Further, this conclusion in the Rule 1925(a) Opinion is premised upon the trial court's misunderstanding that the Winters relied upon this

26

evidence to challenge the underlying violation, which was conclusively established by the Winters' failure to appeal the Enforcement Notice. The Winters did not rely upon the Meeting Minutes to demonstrate on remand that the Enforcement Notice was incorrect because the garage was not used as a dwelling, but instead to show that the Township exhibited bad faith by presenting the trial court with the Meeting Minutes that contained an incorrect statement about the use of the garage. Further, the Winters presented evidence regarding their neighbor's complaint of the underlying violation after the Winters prevailed in litigation against their neighbor and evidence regarding the Township's continued investigation into the violation even after the trial court determined the violation was conclusive. The trial court did not consider this evidence in either the Order or the Rule 1925(a) Opinion. Accordingly, the trial court's conclusion in its Rule 1925(a) Opinion that the Winters' evidence did not demonstrate bad faith is based upon a misunderstanding as to its import in terms of the Meeting Minutes, or a disregard of the evidence in its entirety, as it relates to the allegation of bad faith in the initiation and prosecution of the enforcement action.

Moreover, the trial court's conclusion in its Rule 1925(a) Opinion was contrary to the reasoning in its Order. We agree with the Winters that the trial court erred by augmenting its Order and addressing the Meeting Minutes in the Rule 1925(a) Opinion after it specifically declined to consider them in its Order. As the Superior Court has explained, "it is the order, and not the opinion, which is controlling," and, therefore, an opinion in support of the order "cannot be treated as an attempt to modify the original order." *Cohen v. Jenkintown Cab Co.*, 446 A.2d 1284, 1289 n.8 (Pa. Super. 1982). To the extent the trial court considered the Winters' evidence in its Rule 1925(a) Opinion, the trial court's reasoning in its Rule

27

1925(a) Opinion did not support its Order but proffered new reasoning. In addition, as discussed above, even when it purported to consider that evidence in its Rule 1925(a) Opinion, the trial court continued to misapprehend the significance of the Winters' evidence. Therefore, even under our deferential review to the trial court in attorney fee proceedings, we must conclude based upon our review of the record that the trial court abused its discretion by disregarding the Winters' evidence of bad faith. Accordingly, we reverse the trial court.

However, in reversing the trial court, we are also aware that the question remains regarding what reasonable attorney fees must be awarded to the Township. We also note that we are bound by the law of the case doctrine, which "refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." *Brayman Constr. Corp. v. Dep't of Transp.*, 30 A.3d 560, 562 n.4 (Pa. Cmwlth. 2011) (citation omitted). While we are wary of returning this case to the trial court once more to correct this abuse of discretion, we are cognizant of the longstanding rule that "an appellate court has no power to award counsel fees for matters pertaining to the conduct in the proceedings below[,] but may only award them for frivolous appeals or dilatory, obdurate, or vexatious conduct of a party on appeal." *Presbyterian Med. Ctr. of Oakmont v. Dep't of Pub. Welfare*, 792 A.2d 23, 29 (Pa. Cmwlth. 2002). Therefore, we must remand for the trial court to award reasonable attorney fees consistent with *Winters I* and consistent with this opinion.

This Court stated in *Winters I*:

If, at the outset of the appeal, the parties stipulated to limit the trial court's hearing to the collection of attorney fees, it would be clear that any costs advanced by the Township would not be borne by the Winters

28

because the appeal was not for the enforcement of a zoning violation. Notwithstanding, once the Winters refused to stipulate to the scope of the appeal and challenged the entire enforcement action, the Township was stuck with having to present the merits of the case at the de novo hearing.

*Winters I*, slip op. at 17. We also noted that any fees awarded for the enforcement of UCC provisions were improper and, therefore, instructed the trial court "to recalculate the amount of attorney fees and costs that the Township incurred as a result of the Winters' zoning violation, excluding those fees expended solely for the purpose of collecting attorney fees or prosecuting [the] alleged UCC violations." *Id.* at 17-18. This conclusion, which is the law of the case, is consistent with this Court's precedent "that an award of costs and attorney fees pursuant to Section 617.2 of the MPC is not limited to costs and fees incurred as a result of the action before the [MDJ] but includes all costs and attorney fees incurred as a result of the violation, which may encompass appeals from the enforcement notice." *Platts*, 799 A.2d at 991; *see also Winters I*, slip op. at 16; *Lower Mount Bethel Township v. Gacki*, 150 A.3d 575, 581 (Pa. Cmwlth. 2016). However, our opinion in *Winters I* did not mean that the Township was entitled to **all** fees except for those incurred for UCC violations or for the recoupment of fees. The trial court still needed to address the fees for reasonableness, as required under Section 617.2. Accordingly, the trial court must award **reasonable** attorney fees incurred as a result of the Winters' zoning violation.

In considering which of the fees claimed by the Township are reasonable, the trial court should review any line items: (1) that were incurred for the purpose of collecting attorney fees; (2) that relate to prosecution of UCC violations; (3) that were previously challenged by the Winters and not addressed by the trial court; and (4) that are called into question by the allegations of bad faith. With regard to any

29

line items the Winters specifically challenged, we note that the Winters specifically argued before the trial court that, despite the Township's voluntary redaction of entries that specifically mentioned UCC violations, there were fees for services rendered in pursuit of attorney fees and services unrelated to the enforcement of the zoning ordinance that are not recoverable. The Winters specified in particular: anything after the Township's submission of the no-answer letter to the Supreme Court; entries related to the Township's communications with the Health Department; three specific time entries from February and November 2015 relating to research and drafting a memorandum email regarding attorney fees; the time during which Township Solicitor prepared for and appeared at trial in the capacity of a fact witness on the attorney fees issue; review of the Winters' subdivision application after the de novo trial; and preparation of the Township's brief before the Commonwealth Court. (R.R. at 422a-25a.) However, the trial court is not limited to these specific challenges and should review all other line items for those that are unrelated to the zoning enforcement action or are for the pursuit of attorney fees. We note that, in reviewing these line items, the trial court should consider the relevant line items, as well as the evidence presented on remand to determine whether these fees are reasonable and, therefore recoverable. Finally, for the purpose of clarity, we note that any fees incurred once proceedings began in the trial court for litigating attorney fees pursuant to this Court's remand in *Winters I*, including those incurred in the current appeal and on this remand, are solely for the purpose of collecting attorney fees and are not recoverable. Accordingly, we remand for the trial court to consider the Winters' evidence and award reasonable attorney fees based upon the aforementioned considerations.

30

**IV.     Conclusion**

When the trial court reviewed this matter on remand, it disregarded the evidence presented by the Winters to demonstrate the Township's bad faith and, therefore, the unreasonableness of its attorney fees in their entirety.  Therefore, the trial court abused its discretion.  Although we regret the necessity of doing so, we remand for the trial court to consider the Winters' evidence and assess the line items claimed by the Township for reimbursement for reasonableness in light of the foregoing considerations set forth in this opinion.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Warwick Township               :

                                 :

          v.              :     No. 494 C.D. 2019

                                 :

Jaime Winters and Jason Winters,   :

                 Appellants   :

## O R D E R

**NOW**, October 29, 2020, the Order of the Court of Common Pleas of Chester County (trial court) in the above-captioned matter is **REVERSED**.  This matter is **REMANDED** for the trial court to consider the evidence presented by Jaime Winters and Jason Winters and assess the line items claimed by Warwick Township for reimbursement for reasonableness in light of the considerations set forth in the foregoing opinion.

     Jurisdiction relinquished.

 

_____

**RENÉE COHN JUBELIRER,** Judge
