## Pierce *versus* The Commonwealth.

1. Article 16, section 4 of the Constitution of Pennsylvania, providing for cumulative voting for directors of corporations, is not merely directory and does not require legislation to give it effect.

2. Said section applies only to private corporations.

3. A railroad company is a private corporation; and if incorporated since the adoption of the present constitution is subject to the provisions of article 16, section 4.

4. It is not necessary to the exercise of the right to cumulate votes that notice should be given of intention so to do; the right so to vote is constitutional and unrestrained by any condition.

October 2d 1883. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. PAXSON, J., absent.

ERROR to the Court of Common Pleas of *Venango county:* Of October Term 1883, No. 136.

This was a quo warranto, allowed by the court of Common Pleas of Mercer county, to the Commonwealth of Pennsylvania, ex relatione Wallace Pierce, James B. Pierce, Frank Pierce and James L. Deeter, directed to Jonas J. Pierce, Enoch Filer, Joseph Forker, B. H. Henderson, John Phillips and H. C. Blossom, requiring them to show by what authority they exercised the office of directors of the Sharpsville Railroad Company.

The respondent filed an answer which was, on motion, allowed to be regarded solely as a plea, and the relators having filed a replication thereto, the venue was removed to Venango county and the case tried before TAYLOR, P. J., and a jury, when the facts appeared as follows:

The Sharpsville Railroad Company was a railroad corporation, incorporated March 6th 1876, under the Act of April 4th 1868 (P. L. 62), and subject to the provisions of the Act of February 19th 1849, entitled an "Act regulating railroad companies" (P. L. 79). Its capital stock consisted of 7,000 shares, all of which had been issued before January 8th 1883. On that day the company held an election for a president and six directors. It was admitted that there was no irregularity about the election, that it was properly called and at the proper time. At the election 6,433 shares of the total 7,000 were voted for directors: of these 3,396 were for the respondents and 3,037 were cumulated and distributed among the four relators, making the actual votes cast as follows:

[Pierce *v.* Commonwealth.]

| | | | |
|---|---|---|---|
| Jonas J. Pierce, | 3,396. | H. C. Blossom, | 3,396. |
| Enoch Filer, | 3,396. | Wallace Pierce, | 4,557. |
| B. H. Henderson, | 3,396. | Frank Pierce, | 4,556. |
| Joseph Forker, | 3,396. | James B. Pierce, | 4,555. |
| John Phillips, | 3,396. | James L. Deeter, | 4,552. |

It was testified that none of the votes for the relators were cast until after those for the respondents; nor was any offer to vote made by those voting for the relators until all the stock of the respondents had been polled.

There was evidence that some of the stock that was voted for the relators, amounting to two hundred shares, had been hypothecated and assigned in blank. All the votes cast for the relators were folded up and indorsed with the name of the voter and the number of shares voted. These ballots had been prepared previous to the election by one of the relators who had the plan ready for some time; it was testified that he had said "The Erie gentlemen did not expect that I would play this trick on them. They didn't think I had sealed these votes up and put them away in my safe two weeks before the election, and I didn't let anybody know it." It was denied, however, that this language had been used. Prior to the counting of the votes, no one claimed the right to cumulate his vote.

The votes cast on the cumulative system were not counted by the judges of election, and the respondents were accordingly declared elected.

The respondents asked the court to charge: "That stockholders of railroad companies constructed for general public use, have no legal right to cumulate their votes at any corporate election held by said stockholders, and if such corporations are included in the provisions of section 4 of article 16 of the Constitution of Pennsylvania, the legislature has not passed any law for carrying into effect the provisions of said article, so far as relates to such corporations."

The court answered this point in the negative and charged, inter alia, as follows:

"There is no controversy but that the respondents voted open ballots. If the evidence is believed, it was discovered after the votes were polled for the first time, that the relators had with unanimity voted a cumulative ballot, that is, they voted for four persons only, thus cumulating their votes upon four persons. Now, the whole number of votes for the plaintiffs as cumulated, amounted to four thousand five hundred and fifty-seven (4,557), that—deducting two hundred shares, which were hypothecated, and which the respondents allege the relators were not legally entitled to vote, upon deducting these two hundred shares which had been hypothecated, and there still would be a majority, if you believe the evidence, in favor

[Pierce *v.* Commonwealth.]

of the Pierces, as follows: Wallace Pierce, 4,357; Frank Pierce, 4,356; Jas. B. Pierce, 4,355, and James L. Deeter, 4,352. That is the amount of the cumulative vote upon these four candidates for the office of directors.

"We instruct you, in our opinion, that either party at this election, or any one of either party, had the right to cumulative voting. That is, any one or more could cumulate his vote upon one or as many candidates as he or they saw fit. The ballot was in proper form, and we can see no impropriety in it. The only matter under the law, or which seems to have been required by the law, was that there should be upon the back of the ballot the name of the party voting, and the number of shares he claimed to have the right to vote upon. Under this Constitution we say to you, these relators had the right to cumulate their votes upon one or more of the candidates as they saw fit. We cannot legislate—we can only execute the laws as we understand them.

"There is no general rule of law but will work hardships in particular cases, but the remedy is with the legislature or constitutional convention; not with us. If there be an evil whereby a minority has acquired control of this railroad, the remedy is not with us. We simply execute the law as we find it.

"Now, gentlemen, as to whether there was any fraud in the conducting of that election. As has been well remarked by counsel, fraud vitiates everything, renders null and void all acts, and a court of justice is the last place on earth where it ought to find shelter. But fraud is never presumed—it must be proven. It is proven in the same manner any other fact is proven. That is, the jury must be satisfied from the weight of evidence that there was a fraud perpetrated. The counsel, it seems, have deemed this question of so little importance upon either side, that they have not addressed you upon it. We say to you that, in our opinion [mere secrecy in the conduct of these gentlemen upon either side by withholding from the other party, whom they intended to vote for, or that they intended to cumulate their votes, does not amount to fraud]."

Verdict for the relators, and judgment of ouster thereon against the respondents, whereupon the respondents took this writ, assigning for error, inter alia, the refusal of respondents' point above noted, and so much of the general charge as is included in brackets.

*John P. Vincent,* (with whom was *J. Ross Thompson* and *Miller & Gordon*), for plaintiffs in error.—The fourth section of article 16 of the Constitution does not apply to steam railroads. Section 13 is very broad and might possibly include any cor-

poration, but it relates wholly to private corporations. Article 17 is the one that relates to railroads. A railroad company is a public corporation : Foster *v.* Fowler, 60 Pa. St. 27, 31 ; at least they are quasi public corporations. Article 16 does not execute itself, and the legislature has passed no law to carry it into effect as to railroad companies. The legislature at its first session after the adoption of the Constitution, passed " An Act to provide for the incorporation and regulation of certain corporations " (P. L. 1874, p. 73). In the enumeration of corporations for profit in section 2 of that Act, railroads are expressly excluded. In provides in the fourth enumeration of corporations of the second class those for " the construction of any species of road other than a railroad " and provides in section 10 for cumulative voting in all elections for directors, etc., of any corporation " created under this Act." All corporations not created under this Act are clearly excluded.

The principle which allows cumulative voting is that it is necessary for the protection of minorities. It never occurred to any member of the constitutional convention that it could be used to deprive a majority of what GORDON, J., in Hays *v.* Commonwealth, 1 Nor. 522, declares is a vested right, namely the right of the majority to elect the managers of a corporation. This was the view of the framers of the Constitution : 5 Deb. Const. Conv. 118, 758, 761, 762, 765. The general railroad law of February 19th 1849 (P. L. 87), provides that each stockholder may cast one vote for each share of stock he holds. This law was in force at the adoption of the Constitution and is still in force by virtue of section 2, of the schedule, unless repealed by the Constitution or some law passed to carry the constitution into effect. The legislature has passed no law carrying the provisions of section 4, article 16, into effect, so far as relates to railroads.

Cumulative voting is a privilege, and should be claimed. In any election at which six directors are to be elected, a small fraction over two-fifths of the whole stock could, by such machinery as was used in this case elect two-thirds of the directors. This was a fraud ; it was a concealment by the minority of an organized attempt to elect a majority of directors. The only evidence that was visible on the ballot was that the voter was simply voting the number of shares he owned—there was concerted silence so as to trick the majority : silence may be a fraud : Rex *v.* Gaborian, 11 East 77 ; King *v.* Commissioners, 1 T. R. 148. In People *v.* Railroad Co., 55 Barb. 363, it was said " that all acts done by a portion of a corporation which bear the appearance of trick, secrecy or fraud will be held invalid ; surprise on the part of electors is ground for annulling an election."

*J. H. McCreery* (with whom was *S. Griffith*, and *Jas. A. Stranahan*), for defendant in error.—Railroad companies are private corporations: Pierce on Railroads 1 ; Morawetz on Corporations § 2 ; Eustis *v.* Parker, 1 N. H. 273 ; Rundle *v.* Canal Co., 1 Wallace Jr. 275. In the convention every one agreed that the article would apply to railroad companies : 4 Deb. Const. Conv. 592, 604 ; 5 Deb. Const. Conv. 758. The stockholders had the right to distribute their votes : Hays *v.* Commonwealth, 1 Norris 518, 521. There has been no legislation on section 8 of article 16 ; yet that is given effect : Reading *v.* Althouse, 93 Pa. St. 404 ; Cooley on Const Lim. 99. A right given by the Constitution is beyond the reach of legislation : McCafferty *v.* Guyer, 9 P. F. Sm. 118.

The opinion of the court was delivered October 22d 1883, by GORDON, J.

About the correctness of the ruling of the learned judge of the court below, in this case, we have no doubt. It seems to have been admitted, in the outstart of this trial, that the election of the 8th of January 1883 was properly called, was held at the proper time, and was conducted in an orderly and regular manner. Nor is there any doubt but that the relators received the highest number of votes cast for directors at that election. It is said, however, that this result was brought about by the cumulation of the votes of the relators upon four out of the six candidates proposed for election. But this they certainly had a right to do, or we fail correctly to read the Constitution of 1874 : " In all elections for directors or managers of a corporation, each member or shareholder may cast the whole number of his votes for one candidate, or distribute them upon two or more candidates, as he may prefer :" Article 16, section 4. This section to us seems very plain and unambiguous. If there are six directors to be elected, the single shareholder has six votes, and, contrary to the old rule, he may cast those six votes for a single one of the candidates, or he may distribute them to two or more of such candidates as he may think proper. He may cast two ballots for each of three of the proposed directors, three for two, or two for one, and one each for four others, or finally, he may cast one vote for each of the six candidates. Now, as this Sharpsville Railroad Company was incorporated since the adoption of the new Constitution, it is necessarily subjected thereto, and must be governed by its provisions. But the provision above cited vested in the relators, as stockholders, the absolute right to vote as they did, and if, as a consequence of the exercise of such right, their candidates had the highest number of votes cast at that election, they are the rightful directors of the cor-

poration. But, it is said, this provision is but directory, and it cannot go into effect without some legislative action directing the manner of its exercise. To this proposition we cannot assent. There is no alteration required in the mode of conducting corporate elections; each company continues to use that method prescribed by its charter, and the constitutional right is one that belongs solely and exclusively to the individual shareholder. He may exercise it or not as to him may seem proper, but whether he does so exercise such right or not, the ordinary manner of conducting the corporate election is in no wise interfered with. Legislative action is, therefore, uncalled for; it would be useless to alter the present mode of election, and with the right itself the General Assembly cannot meddle. Again, it is urged, that from the heading of this section, it is obviously intended to apply only to private corporations, and as a railroad company is not a private but a public corporation, therefore it applies not to the case in hand. To the first part of this proposition we assent, but dissent as to the second part. Railroad and canal companies are private corporations. This we have decided in point twice within the last two years; once in the case of Timlow v. The Philadelphia and Reading Railroad Company, 3 Out. 284, and again in the case of the Pittsburgh and Lake Erie Railroad Co. v. Bruce, 6 Out. 23. If, however, these are not enough for the establishment of the point in issue, we may cite Pierce on Railroads, p. 1; Morawetz on Private Corporations, § 2, and Redfield on the Law of Railways, vol. I. 52–3. The last named author cites many books for the position assumed, which any one curious about such matters may consult for himself. So in the case of the trustees of the Presbyterian Society v. The Auburn and Rochester Railroad Co., 3 Hill 567, it is said that a railroad company is not public, nor does it stand in the place of the public; it is but a private corporation over whose rails the public may travel if they choose to ride in its cars. Indeed, we regard it as a misnomer to attach even the name "quasi public corporation" to a railroad company, for it has none of the features of such corporations, if we except its qualified right of eminent domain, and this it has because of the right reserved to the public to use its way for travel and transportation. Its officers are not public officers, and its business transactions are as private as those of a banking house. Its road may be called a quasi public highway, but the company itself is a private corporation and nothing more. We have, therefore, no hesitation in saying that it is embraced by the provisions of the 4th section of article 16 of the constitution.

Finally, we have the allegation of fraud, in this, that the relators did not give the respondents notice in advance, that they were

going to cumulate their votes on four candidates. But as this was simply the exercise of a constitutional right, of which the respondents were presumed to be as well informed as the relators, and as the Constitution placed its exercise entirely within the volition of the individual stockholder, we do not see who has the right to restrain that volition by the imposition of any condition whatever, or to compel the voter to say in advance whether he will or will not use that privilege. Up to the very moment of voting he has the positive right to exercise his own will in this matter, and to us that sounds like a strange allegation which charges the plaintiffs with fraud upon the ground simply that they did that only which the supreme law of the State authorized them to do, that is, quietly and according to their own will, distribute their votes upon four candidates instead of six. With the learned judge of the court below, we must agree, that in this there has been no wrong committed upon the respondents.                    Judgment affirmed.