IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chesapeake Thermite Welding, LLC,   :
d/b/a CTW,   :
  :
              Petitioner   :
  :
         v.   : No. 548 C.D. 2021
  : Argued: June 23, 2022
Department of Transportation,   :
  :
              Respondent   :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                       FILED: October 17, 2022


          Chesapeake Thermite Welding, LLC d/b/a CTW (CTW) petitions for review of the determination of the Acting Executive Deputy Secretary (Secretary) of the Department of Transportation (Department) that dismissed CTW's bid protest regarding the Intermodal Terminal Rehabilitation project in Beaver, Pennsylvania (Project), because CTW lacked standing to file a protest against the Department and because the protest is barred by sovereign immunity. CTW presents three issues for our review. First, CTW argues that the Department's Bureau of Rail Freights, Ports, and Waterways (Bureau) lacked compelling justification to reject CTW's bid, and that the Secretary's determination was arbitrary and capricious, an abuse of

discretion, or an error of law. Second, CTW argues that the Rail Freight Preservation and Improvement Act (Act)[1] which, in relevant part, authorizes the Department to provide grants to railroad companies to undertake capital projects to maintain, improve, and rehabilitate rail freight transportation services, does not except such grants from competitive bidding under the Procurement Code, 62 Pa. C.S. §§101-4604, where the grantee is an agent of the Department. Third, CTW argues that the contract between the Department and grantee is a contract for procurement of construction, subject to Section 102(f) of the Procurement Code, 62 Pa. C.S. §102(f). After careful review, we conclude that the contract for the Project is not a contract for procurement of construction under the plain language of Section 102(f) of the Procurement Code, because its primary purpose is not to procure construction for the Department, but rather to procure construction for the grantee, a private entity. Accordingly, we affirm the Secretary's May 4, 2021 determination.

The relevant facts as found by the Secretary are as follows. CTW filed a protest on March 11, 2021, regarding the Project. Secretary 5/4/21 Determination at 1. The protest concerned the invitation to bid under which a private company, Pittsburgh Intermodal Terminals, Inc. (PIT), through its Project manager, Railroad Solutions, Inc. (RSI), solicited bids on December 24, 2020. *Id.* After review, PIT ultimately awarded the contract to Keystone Railroad Services (KRS) and not to CTW. *Id.* at 7. The Project is to be funded by a grant made through the Rail Freight Assistance Program (RFAP), one of the grants authorized by the Act, to assist in the construction or rehabilitation of local railroad lines primarily used by businesses within the Commonwealth. *Id.* The RFAP provides 70% of the funding for the

---

[1] Act of July 5, 1984, P.L. 587, No. 119, 55 P.S. §§696.1-696.11.

Project, and the owner, in this case PIT, provides the remaining 30% of the funding. *Id.*

The Secretary determined that CTW's protest was timely under the Procurement Code, which the Department does not dispute. Secretary 5/4/21 Determination at 1-2. The Secretary also determined that a hearing was not necessary to render a decision, which CTW does not dispute. *Id.* The Department filed a motion to dismiss on March 18, 2021, requesting the summary dismissal of CTW's protest because CTW lacked standing to file its protest, and because the Department lacked jurisdiction over a private procurement under the Procurement Code. *Id.* at 3. The Department noted that CTW's counsel previously represented a different entity, K.W. Reese, Inc. (KWR), in a protest "containing the same set of facts" present here, and that CTW's protest should be dismissed for the same reasons.[2] *Id.* The Secretary stated that here, as in the earlier KWR case, she must resolve "exactly what role the Department played, who the active parties are in this bid protest, which parties entered into the ensuing contract, and whether or not [the Department] is a contract holder as defined in the Procurement Code." *Id.* The

---

[2] The Secretary's January 22, 2020 Determination in the KWR protest may be found in the Reproduced Record (R.R.) at 141a-48a. The Secretary summarized the KWR Determination as follows:

> [KWR] filed a bid protest on a project that was partially funded (70%) through the RFAP administered by the Bureau, grantor, in which a private company, Mineral Manufacturing Corp[oration], was the grantee. The resulting contract of the bidding process was between two private entities, Mineral Manufacturing Corp[oration] and Track Builders, Inc.; not the Department [] or the Bureau. Thus, under the Procurement Code, [KWR] lacked standing and the claim was barred by sovereign immunity.

Secretary 5/4/21 Determination at 4, n.6. The parties did not represent, nor did our research reveal, that KWR appealed the Secretary's decision in that matter.

Secretary determined that here, as in the earlier KWR Determination, the Department "is not the contract holder or the purchasing agent" as defined under the Procurement Code, and granted the Department's motion to dismiss. *Id.* at 4. Nevertheless, the Secretary addressed CTW's and the Department's arguments as if she had reached the merits of the case. *Id.*

The Secretary found that here, similar to the KWR case, the Department entered into a Rail Freight Grant Agreement (Grant Agreement) with PIT,[3] which "succinctly enumerates the role of the Department in this matter." Secretary 5/4/21 Determination at 4. The Secretary determined that the Grant Agreement is clear that the Department's role in the Project is as a "grantor, with an oversight on how these monies are expended." *Id.*; *see also* R.R. at 165a. The Secretary also determined that the Grant Agreement required PIT to secure competitive bids for expenditures exceeding $5,000, to develop bid specifications, advertise, open bids, and award the contract to the lowest responsive bidder. Secretary 5/4/21 Determination at 4; *see also* R.R. at 169a.

CTW argued that because the Department required PIT to comply with competitive bidding laws, that PIT was acting as an agent for the Department, citing in support *Pennsylvania Federation of Teachers v. School District of Philadelphia*, 484 A.2d 751 (Pa. 1984), which struck down as unconstitutional part of the Public School Employees' Retirement Code[4] that increased the basic retirement contribution rate for Public School Employees' Retirement System members prior to the effective date of the legislation. In so doing, the Supreme Court rejected the Commonwealth's argument that public school districts are independent employers

---

[3] The Grant Agreement may be found in the Reproduced Record at 165a-78a.

[4] 24 Pa. C.S. §§8101 - 8535.

4

and are not part of the Commonwealth. *Pennsylvania Federation of Teachers*, 484 A.2d at 753. The Secretary determined that CTW's argument that PIT was the Department's agent was "not well taken because there is a significant distinction between a public school and a private company." Secretary 5/4/21 Determination at 5. The Secretary determined that it is well established that public school districts are agents of the Commonwealth, to which the legislature delegated the responsibility to provide public education, and that school districts are publicly owned and operated, which the Supreme Court explained in *Pennsylvania Federation of Teachers*. *Id.* In contrast, the Secretary determined that PIT is a "privately owned entity" and the grant funds are merely to assist in defraying the cost of construction, maintenance and repair performed on rail lines owned by a private entity within the Commonwealth. *Id.*; *see also* R.R. at 165a. The Secretary determined that "evidence of a state government providing grants with a private entity is not sufficient to establish control by a government agency, and such relationship as grantor/grantee does not automatically transform a private entity into an agent of the government." Secretary 5/4/21 Determination at 5.

The Secretary next addressed CTW's argument that because the Project is funded by an RFAP grant with a primary purpose of construction, that the grant is not a grant but is rather a "procurement contract" under Section 102(f) of the Procurement Code. Secretary 5/4/21 Determination at 5-7. CTW argued generally that railway projects are public improvements that may not be altered without the approval of the Commonwealth or the Public Utility Commission, citing *McNulty Brothers Company v. Pennsylvania Railroad Company*, 116 A. 362 (Pa. 1922), *Bachrach v. Huntingdon & Broad Top Mountain Railroad & Coal Company*, 133 A. 641 (Pa. 1926), and the *Pennsylvania Law Encyclopedia*, 41 P.L.E. Railroads §4

(Matthew Bender & Company, Inc. 2022). CTW further argued that the Bureau Project Management Policy describes the grant as necessary to assist the Bureau in the development and construction of rail improvement projects, and deems the grant funded projects to be construction. R.R. at 131a-34a. CTW further argued that because the Project work is construction related, that Section 102(f) of the Procurement Code should apply.

The Department responded that bid protest procedures set forth in Section 1711.1(a) of the Procurement Code, 62 Pa. C.S. §1711.1(a), apply only to contracts as defined in the Procurement Code, and not to grants. Section 102(f) of the Procurement Code, 62 Pa. C.S. §102(f), states:

> This part does not apply to grants. For purposes of this part, a grant is a furnishing of assistance by the Commonwealth or any person, whether financial or otherwise, to any person to support a program. *This term does not include an award whose primary purpose is to procure construction for the grantor*. Any contract resulting from such an award is not a grant but a procurement contract. (Emphasis added.)

The Secretary reviewed Section 102(f) of the Procurement Code and determined "[t]hat exception does not apply here, however, because the primary purpose of the construction that comprises the Project is for the benefit of PIT and not the Department," and that the exception argued by CTW is "simply not applicable." Secretary 5/4/21 Determination at 6. The Secretary further explained that even if Section 102(f) of the Procurement Code applied for sake of argument, any contract resulting from the award would be between PIT and the successful contractor, and would therefore not satisfy the definition of "contract" under Section 103 of the Procurement Code, 62 Pa. C.S. §103, which requires that all contracts

6

with the Commonwealth be reviewed and signed under the Commonwealth Attorneys Act.[5] Secretary 5/4/21 Determination at 6.

The Secretary further explained that the contract defined in Section 103 of the Procurement Code, 62 Pa. C.S. §103, does not apply to the contract objected to by CTW, stating:

> PIT is a private corporation and neither the Department nor any other Commonwealth agency is or will be a party to the contract awarded by PIT to Kennedy Railroad Services ("KRS")[, the successful bidder on the Project]. The Department's sole involvement in the Project is that of grantor. The Department is merely providing funding to a private corporation, PIT, to assist with rehabilitating its privately-owned infrastructure, which is unlike a school district or a state highway which is a publicly owned entity. When these definitions are applied to this procurement, which is the subject of [CTW's] [p]rotest, it is clear that the protest procedures set forth in the Procurement Code do not apply since none of the critical elements of the definitions have been satisfied.

Secretary 5/4/21 Determination at 7.

The Secretary then addressed additional arguments regarding CTW's standing to file a bid protest against the Department, as governed by Section 1711.1 of the Procurement Code. Secretary 5/4/21 Determination at 7-9. The Department argued that PIT, not the Department, was the purchasing agency responsible for soliciting bids and awarding contracts under the Grant Agreement, and that PIT, not the Department, will be a party to the resulting contract with KRS. *Id.* at 7. Relevant here, Section 103 of the Procurement Code defines purchasing agency as "[a] Commonwealth agency authorized by this part or by other law to enter into contracts for itself or as the agent of another Commonwealth agency." 62 Pa. C.S. §103. In

---

[5] Act of October 15, 1980, P.L. 89, *as amended*, 71 P.S. §§732-101-732-506.

relevant part, Section 1711.1(a) of the Procurement Code permits a bidder aggrieved in connection with the solicitation or award of a contract to "protest to the head of the purchasing agency in writing." 62 Pa. C.S. §1711.1(a). Section 1711.1(b) of the Procurement Code requires the disappointed bidder to file its protest "with the head of the purchasing agency." 62 Pa. C.S. §1711.1(b).

The Secretary reviewed these statutory provisions and determined that the Procurement Code does not authorize disappointed bidders to protest to anyone other than the head of the purchasing agency, nor does it authorize anyone other than the head of the purchasing agency to entertain bid protests. Secretary 5/4/21 Determination at 8. The Secretary determined that the plain language of the Procurement Code "does not authorize the Secretary to entertain this protest since the ensuing contract is between two private entities[,] PIT and KRS, and not a Commonwealth agency." *Id.* The Secretary determined that "there appears to be no conflict or ambiguity" in Sections 102 and 103 of the Procurement Code which both refer to "Commonwealth agencies under any contract." *Id.* at 9.

CTW argued that because the Bureau sets forth, oversees, and approves all aspects of the bidding process, it should be required to address bid protests even when the bidding process is managed by a third party, such as RSI. Secretary 5/4/21 Determination at 9. The Secretary reviewed the exhibits attached to CTW's bid protest and found those documents "contrary to establishing any plausible basis for concluding that the Bureau has any contractual rights or obligations relative to a *contract holder or owner*" under the Procurement Code. *Id.* at 9-10 (emphasis in original). The Secretary noted that CTW was in possession of the Project bid package when it submitted its bid. *Id.* at 10. *See also* R.R. at 21a-85a. In the Project bid package, PIT is referred to as the "Owner" responsible for inviting bids to

8

perform the Project. R.R. at 23a. The Project bid package further explains that the Project Manager (here, RSI) assists the Owner with administering the Commonwealth's grant requirements. *Id.* at 26a. The Project bid package also states that "[t]he Owner alone will determine whether a given Bidder is sufficiently qualified and experienced to properly commence, perform and complete the [P]roject and work herein specified." *Id.*

CTW further argued that, pursuant to the Bureau Project Management Policy, PIT must provide "compelling justification" for rejecting CTW's low bid, and that PIT failed to conduct an appropriate investigation to justify denying CTW's bid. Secretary 5/4/21 Determination at 10-11; *see also* R.R. at 131a-34a. The Bureau Project Management Policy provides specifications for grant-funded rail projects that apply to rail grant project agreements (like the Grant Agreement here). The Secretary reviewed the Bureau Project Management Policy and determined that "it is clear that during the bidding process PIT, the Owner, was the decision maker and actual investigator, not [the Department] or the Bureau." Secretary 5/4/21 Determination at 11. After review of the Project bid package, including the Bureau Project Management Policy, the Secretary determined that

> CTW cannot utilize the bid protest procedures set forth in the Procurement Code because the Department was not the purchasing agency that issued the solicitation and the Department did not enter into a contract with KRS. These threshold requirements have not been met and therefore the protest procedures are not available to CTW to challenge the contract award made by a private company.

*Id.*

The Secretary then addressed the Department's argument that CTW's protest is barred by sovereign immunity. The Secretary explained that aggrieved bidders must use Section 1711.1 of the Procurement Code to challenge the

9

solicitation or award of a contract, or a contractor may pursue a contract claim under Section 1712.1 of the Procurement Code, 62 Pa. C.S. §1712.1, as the "sole avenues of relief against the Department." Secretary 5/4/21 Determination at 11-12. The Secretary further explained that the Commonwealth enjoys sovereign immunity under article I, section 11 of the Pennsylvania Constitution.[6] In Section 1702 of the Procurement Code, 62 Pa. C.S. §1702, the General Assembly reaffirmed the Commonwealth's sovereign immunity except for claims against Commonwealth agencies brought under Section 1711.1 or 1712.1 of the Procurement Code, but only to the extent set forth in the Procurement Code. Secretary 5/4/21 Determination at 11-12.

The Department argued that our Supreme Court's holding in *Scientific Games International, Inc. v. Commonwealth*, 66 A.3d 740 (Pa. 2013), reaffirms the Commonwealth's sovereign immunity from contract claims except as permitted by Section 1711.2 of the Procurement Code, vesting exclusive jurisdiction over contract claims with the Board of Claims, and rejecting this Court's original jurisdiction to provide equitable relief outside the Procurement Code. CTW disputes the applicability of *Scientific Games* because that case addressed jurisdiction over contract disputes when a solicitation is cancelled, which is not at issue here. The Secretary agreed with CTW but determined that this distinction "in no way diminishes the force of the well-established doctrine of sovereign immunity" under the Procurement Code "which is designedly structured to accord immunity, subject to specific and limited exceptions." Secretary 5/4/21 Determination at 12.

---

[6] Pa. Const. art. I, §11. Article I, section 11 states in relevant part: "Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."

10

The Secretary determined that, "in light of these facts" CTW's protest must be dismissed "on the basis that the Department is not the contract owner, is not acting on behalf of another Commonwealth agency" and "is not a purchasing agency" as defined in the Procurement Code. Secretary 5/4/21 Determination at 13. Because CTW's protest is not within the "category of administrative procurement protests" authorized by Section 1711.1 of the Procurement Code, the Secretary dismissed CTW's protest against the Department for lack of standing, and because it is barred by sovereign immunity. *Id.* CTW then petitioned the Court for review.[7]

As to the first issue, CTW argues that it had no other avenue to pursue its bid protest than under Section 1711.1 of the Procurement Code, and that the Secretary erred in dismissing its protest for lack of jurisdiction. CTW argues that in *Brayman Construction Corporation v. Department of Transportation*, 30 A.3d 560 (Pa. Cmwlth. 2011) (*Brayman II*), our Court granted Brayman's motion for summary judgment and a permanent injunction barring the Department from using a short-list process, instead of a lowest responsible bidder process, to award a design-build construction contract. In *Brayman II*, the issue was whether a design-build construction contract was exempt from competitive bidding as a professional services contract, and our Court held that it was not, because the Procurement Code defines design-build construction contracts as a type of construction contract.

___

[7] Our standard of review in a bid protest under the Procurement Code is as follows:

> The [C]ourt shall hear the appeal, without a jury, on the record of determination certified by the purchasing agency. The court shall affirm the determination of the purchasing agency unless it finds from the record that the determination is arbitrary and capricious, an abuse of discretion or is contrary to law.

62 Pa. C.S. §1711.1(i).

11

*Brayman II*, 30 A.3d at 565. *Brayman II* did not involve a grant, nor was there a contract between private parties at issue.

CTW argues that our Court's holding in *Brayman II* should be extended to permit CTW to seek equitable relief from the Department, even if the contract at issue might not technically be within the purview of the Procurement Code.[8] CTW then argues that the Secretary, sitting in equity, could have found there was no "compelling justification" for PIT to reject CTW's low bid, which it argues applies to PIT by way of the Bureau Project Management Policy. *See* R.R. at 131a-34a. CTW then proceeds to argue against the merits of PIT's rejection of CTW's bid, disagreeing with the reasons given in PIT's denial letter. *See id.* at 127a. CTW avers, without reference to the record below, that because PIT did not conduct any investigation before rejecting CTW's bid "any negative information could only have come from [Project manager] RSI," and RSI's information "is wrong." *See* CTW's brief at 16-17. CTW argues that because PIT failed to provide compelling justification to deny CTW's low bid, the Secretary arbitrarily and capriciously disregarded PIT's actions or erred as a matter of law when she dismissed CTW's protest for lack of standing.

---

[8] CTW also argues that if it lacks standing as a disappointed bidder under the Procurement Code, it could be granted taxpayer status even though it is a Virginia limited liability company. The Department denies that CTW qualifies for taxpayer standing, and CTW did not develop or offer support for this argument. Therefore, we find that CTW waived any taxpayer standing claim, because it failed to present argument in its brief to this Court. *See* Pa. R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part . . . the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."); *Commonwealth v. Spotz*, 716 A.2d 580, 585 n.5 (Pa. 1998), *cert. denied*, 526 U.S. 1070 (1999) (holding that the failure to develop issue in appellate brief results in waiver); *Browne v. Department of Transportation*, 843 A.2d 429, 435 (Pa. Cmwlth. 2004) ("At the appellate level, a party's failure to include analysis and relevant authority results in waiver.").

The Department responds that *Brayman II* is distinguishable from the facts presented here, and does not expand the Department's jurisdiction over protests not covered by the Procurement Code. The Department rejects CTW's attempts to introduce information not contained in the record below, relating to CTW's disagreement with the reasons for PIT's denial of CTW's bid. The Department points to PIT's denial letter, which acknowledges that CTW submitted the lowest bid for the Project, but notes that Section E of the Project bid package clearly states that "price alone is not the sole qualification for the contract to be awarded and that [PIT] alone will determine whether a [b]idder is sufficiently qualified and experienced." R.R. at 127a; *see also id.* at 26a. The Department responds that PIT, and not the Department, was responsible for reviewing CTW's bid and assessing CTW's record and experience with other projects in the Commonwealth. PIT concluded that it must reject CTW's bid for several reasons including, without limitation, CTW's limited access to credit for a project of this size and concerns about the construction schedule, as well as "significant concerns regarding the quality of work at prior projects and jobsite safety practices." *Id.* at 127a. The Department responds that although the Secretary correctly concluded that CTW's bid protest did not fall under the Procurement Code, the Secretary correctly analyzed the merits of the denial, reached a well-reasoned conclusion, and was not arbitrary or capricious, and the decision was not contrary to law. The Department rejects CTW's argument that PIT failed to provide "compelling justification" to reject CTW's bid, when the Bureau Project Management Policy, by its stated terms, applies to the Department's Grant Agreement with PIT, and not to PIT's rejection of CTW's bid. *Id.* at 131a-34a.

As to the second issue, CTW argues that although the bid solicitation and resulting contract will be between two private parties, its bid protest should still proceed under the Procurement Code because PIT is an agent of the Department. CTW argues that Section 7(b) of the Act, 55 P.S. §696.7(b), which authorizes the Commonwealth to provide assistance to preserve, rehabilitate and improve rail freight services, requires "competitive bids" to be secured "before any purchase or sale, by contract, or otherwise is made or before any contract is awarded for construction . . . repairs or maintenance or for rendering any services to the [D]epartment." CTW argues that the phrase "or otherwise" should be interpreted to apply to grants. CTW further argues that PIT should be considered an agent of the Department, based on the persuasive, if not controlling, holding in *Pennsylvania Federation of Teachers*, 484 A.2d 751. CTW argues that under the traditional agency law, because the bid protest provisions in the Procurement Code are applicable to the Department, they should also be applicable to PIT as the Department's agent.

The Department rejects CTW's argument that PIT acted as the Department's agent for the Project, and focuses on the plain language of the Procurement Code that provides protest procedures for bids or contracts for Commonwealth contracts, and not for contracts between private parties or for grants. The Department responds that *Pennsylvania Federation of Teachers* does not support a finding that PIT acted as the Department's agent, because PIT is a private entity and not a public school. The Department further responds that Section 102 of the Procurement Code applies to "Commonwealth agencies under any contract," and does not apply to a contract between a private entity, PIT, and the bid winner, another private entity, KRS. The Department further responds that Section 103 of the

14

Procurement Code further defines contract as an agreement "for the procurement of construction . . . executed by all parties in accordance with . . . the Commonwealth Attorney's Act." 62 Pa. C.S. §103. The Department argues that because the contract awarded will be between PIT and KRS, two private entities, to which the Department is not a party, this contract does not fall within the Procurement Code definition.

The Department further responds that CTW concedes that per Section 102(f) of the Procurement Code, 62 Pa. C.S. §102(f), bid protest procedures do not apply to grants. The Department argues that our Supreme Court's holding in *U.S. Venture, Inc. v. Commonwealth*, 255 A.3d 321 (Pa. 2021), further supports the interpretation that the Procurement Code does not apply to grants. In *U.S. Venture*, the Supreme Court analyzed whether two grant agreements awarded by the Department of Community and Economic Development (DCED) to U.S. Venture to construct or upgrade fuel stations by adding compressed natural gas pumps should be considered "procurement contracts" to "procure construction for the grantor [here, DCED,]" under Section 102(f) of the Procurement Code. *Id.* at 323. Because the construction contract did not procure construction for DCED, but procured construction for a private entity on property which it owned, the Supreme Court held that the resulting contract did not meet the Procurement Code definition of "contract." *Id.* at 340. Although U.S. Venture sought review of a contract dispute by the Board of Claims under Section 1711.2 of the Procurement Code, and not a bid protest under Section 1711.1, the Department argues that the Supreme Court's analysis of Section 102(f) of the Procurement Code should also apply here. The Department argues that *U.S. Venture* further applies because, herein, the record contains no evidence that the contract on which CTW bases its bid protest is primarily to benefit the Department; the language in the Grant Agreement defines

15

the Department as grantor; and the Bid package defines PIT as Owner. In its reply brief, CTW argues that *U.S. Venture* is completely distinguishable from this case because it involved different enabling legislation, different grants, and a contract dispute rather than a bid protest.

As to the third issue CTW argues that because railroads are considered public improvements under *McNulty Brothers Company*, 116 A. 362, and *Bachrach*, 133 A. 641, the contract resulting from the RFAP grant should be deemed a procurement contract "whose primary purpose is to procure construction for the grantor" under Section 102(f) of the Procurement Code. CTW also cites 41 P.L.E. Railroads §4 for the proposition that "[w]hen public lands or the lands of others are taken in any quantity for the construction and operation of a railroad, the railroad becomes a public highway for the public benefit, subject to the police power of the Legislature and the regulation of the Public Utility Commission." CTW argues that Section 2 of the Act, 55 P.S. §696.2, which is the enabling legislation for the RFAP grant, clearly states that the purpose of the RFAP grant is to provide "State financial assistance for the preservation and improvement of essential rail freight transportation services, systems[,] and facilities," which the legislature found to be essential for the provision of "efficient and coordinated rail freight transportation services" within the Commonwealth. 55 P.S. §696.2(b), 696.2(a)(3). CTW argues that because the RFAP grant benefits the Commonwealth, the resulting contract should be viewed as one which procures construction for the Commonwealth as grantor.

The Department rejects CTW's interpretation of Section 102(f) of the Procurement Code, and responds that the RFAP grant does not procure construction for the Department as grantor, but rather procures construction for PIT, a private

16

entity and owner of the railroad property. The Department further responds that the contract resulting from the RFAP grant is not a contract as defined in the Procurement Code because it is a contract between PIT and KRS, two private entities, to which the Commonwealth is not a party, and which does not require review under the Commonwealth Attorneys Act.

The Department further argues that the Secretary correctly determined that the Commonwealth's sovereign immunity barred CTW's bid protest, as limited by the waiver for bid protests and contract claims under the plain language of the Procurement Code. The Department argues that Section 1702(a) of the Procurement Code "reaffirms" the Commonwealth's sovereign immunity, except for the specific provisions in Section 1702(b) of the Procurement Code, which waives sovereign immunity to claims against Commonwealth agencies "brought in accordance with [S]ections 1711.1 (relating to protests of solicitations or awards) and 1712.1 (relating to contract controversies) . . . but only to the extent set forth in this chapter." The Department argues that CTW may not seek relief from the Commonwealth except as outlined in Section 1711.1 of the Procurement Code, which CTW may not do because of the reasons already discussed.

The Department argues that in *Scientific Games*, 66 A.3d 740, the Supreme Court held that the waiver of sovereign immunity is limited by the language of the Procurement Code. Specifically:

> The Procurement Code establishes administrative processes to address disputes arising in the procurement setting. On account of the doctrine of sovereign immunity, however, contractors, bidders, and offerors have limited recourse and remedies. Relative to controversies in matters arising from procurement contracts with Commonwealth agencies, the Board of Claims retains exclusive jurisdiction (subject to all jurisdictional

17

> prerequisites), which is not to be supplanted by a court of
> law through an exercise of original jurisdiction.

*Scientific Games*, 66 A.3d at 760. The Department argues that the Supreme Court considered *Scientific Games* in *U.S. Venture*, where the Supreme Court held that "Section 102(f) [of the Procurement Code] preserves sovereign immunity for disputes involving grants, and the provision in its entirety must be construed in favor of preserving sovereign immunity." *U.S. Venture*, 255 A.3d at 337. The Department argues that the plain language of Section 102(f) of the Procurement Code, as interpreted by *Scientific Games* and *U.S. Venture,* prohibits CTW from seeking equitable relief against the Commonwealth outside the Procurement Code, because such actions are barred by sovereign immunity. In its reply brief, CTW argues that *U.S. Venture* is distinguishable from its bid protest, because the enabling legislation and resulting grant were not RFAP grants.

We reject CTW's first argument and affirm the Secretary's May 4, 2021 Determination because it was not arbitrary or capricious nor not contrary to law, as defined by the applicable standard of review in Section 1711.1(i) of the Procurement Code. The additional standard proposed by CTW, that PIT must provide "compelling justification" to reject the low bidder, found in the Bureau Project Management Policy, is not applicable here. The Bureau Project Management Policy states that "[i]t is understood and agreed that, unless otherwise indicated in writing in an executed Rail Grant Project Agreement, the specifications hereinafter set forth apply to and become part of all Rail Grant Projects[.]" R.R. at 131a.

Here, the Grant Agreement between the Department and PIT specifies the applicable standard that "[f]or contracted or subcontracted work, the [g]rantee[, here PIT,] shall determine the lowest responsive bidder," and then the grantee shall forward "a copy of all bids as received . . . and the determination of the selected

bidder" to the Department. R.R. at 169a. The Project bid package specifies that the owner, here PIT, alone will determine whether a given bidder is sufficiently qualified and experienced to perform the Project. *Id.* at 26a. It further states that the owner may investigate as it deems necessary to determine the bidder's ability to perform the work, including the bidder's "record and experience" in performing work on other Department grants. *Id.* The Project bid package further states that the owner will award the contract "to the lowest responsive and responsible" bidder. *Id.* at 27a. In considering whether a bidder is responsible, the owner may consider the bidder's equipment, manpower, performance on other Department projects, and construction schedule. *Id.* Any history of untimely project completion, unauthorized substitution of materials, other departures from bid specifications, or any pending or threatened litigation on other Department grant projects "may be deemed to demonstrate that the [b]idder does not satisfy the threshold as a responsible [b]idder." *Id.* PIT followed its Grant Agreement and the terms of the Project bid package when it rejected CTW's low bid and gave numerous reasons for the rejection, even though CTW does not agree with those reasons. *Id.* at 127a.

We also reject CTW's second argument that PIT is an agent for the Department, given the plain language of the Procurement Code, Grant Agreement, and Project bid package, all of which designate the Department as grantor, and PIT as grantee or owner, with the resulting contracts between PIT and KRS, both private entities. We decline to extend the holding of *Brayman II* as urged by CTW, because the underlying facts of *Brayman II* did not involve a grant-funded project, or a construction contract between two private parties, which are the facts before us here. *Brayman II* involved a construction contract between the Department and the contractor to replace a bridge along an interstate highway. *Brayman II*, 30 A.3d at

19

561. Because the project in *Brayman II* involved a contract between the Department and a contractor to make improvements on a public road, and did not involve a grant, or a contract between private parties to make improvements on private property, it is distinguishable from the Project here.

*Pennsylvania Federation of Teachers* does not advance CTW's argument that PIT's grant-funded Project to improve freight railroad facilities on its own property makes it an agent for the Department or for the Commonwealth. We agree with the Secretary who determined that CTW's argument that PIT was the Department's agent was "not well taken because there is a significant distinction between a public school and a private company." Secretary 5/4/21 Determination at 5. We agree that public school districts are agents of the Commonwealth, to which the legislature delegated the responsibility to provide public education, and that school districts are publicly owned and operated, which the Supreme Court explained in *Pennsylvania Federation of Teachers*, 484 A.2d at 753. In contrast, PIT is a privately owned entity, and the grant funds are being provided by the Department to assist in defraying the cost of construction, maintenance and repair performed on rail lines owned by PIT. We agree with the Secretary's determination that "evidence of a state government providing grants [to] a private entity is not sufficient to establish control by a government agency, and such relationship as grantor/grantee does not automatically transform a private entity into an agent of the government." Secretary 5/4/21 Determination at 5.

We also reject CTW's third argument that its bid protest falls within the exception in Section 102(f) of the Procurement Code, as an award the primary purpose of which "is to procure construction for the grantor" based on the plain language of the Procurement Code, and the guidance provided by *Scientific Games*

and *U.S. Venture*. At issue is the interpretation of Section 102(f) of the Procurement Code, and specifically, whether the "primary purpose" of the RFAP grant awarded to PIT "is to procure construction for the grantor." 62 Pa. C.S. §102. When presented with issues of statutory interpretation, this Court's standard of review is *de novo* and our scope of review is plenary. *Whitmoyer v. Workers' Compensation Appeal Board (Mountain Country Meats)*, 186 A.3d 947, 954 (Pa. 2018).

> We are mindful, as always, that the object of statutory interpretation is to ascertain the intent of the General Assembly, the best indicator of which is the plain language of the statute itself. 1 Pa. C.S. §1921(a)(b); *Department of Labor & Industry v.* [*Workers' Compensation Appeal Board*] *(Lin &* [*Eastern*] *Taste)*, 187 A.3d 914, 922 (Pa. 2018). Where statutory language is clear and unambiguous, this Court must give effect to the words of the statute. *Crown Castle NG* [*East*] *LLC v. Pennsylvania Public Utility Commission*, 234 A.3d 665, 674 (Pa. 2020). When interpreting a statute, courts may not look beyond the plain meaning of a statute under the guise of pursing its spirit. *Id.*; *see also Warrantech Consumer Products Services, Inc. v. Reliance Insurance Company in Liquidation*, 96 A.3d 346, 354 (Pa. 2014).

*City of Johnstown v. Workers' Compensation Appeal Board (Sevanick)*, 255 A.3d 214, 221 (Pa. 2021).

Section 102(f) of the Procurement Code excepts grants from the bid protest process. CTW does not dispute the Project is a grant-funded project. Section 102(f) provides that a grant may be a procurement contract, and thus, subject to the bid protest process, only if the primary purpose of the award is "to procure construction for the grantor." The Act and the Grant Agreement clearly designate the Department as the grantor and PIT as the Project owner. As such, the primary purpose of the award is to procure construction for PIT, and not the Department.

21

We are unpersuaded by CTW's argument that railway projects may not be altered without the approval of the Commonwealth or the Public Utility Commission because they are public improvements, or that the "primary purpose" of the RFAP grant here is to procure construction for the Department as grantor. In *McNulty Brothers*, cited by CTW, our Supreme Court considered whether a subcontractor on a railway project could enforce a mechanics lien against a railroad company for work it performed on a railroad office building connected to the freight station. *McNulty Brothers*, 116 A. at 363. The Court held that the subcontractor could not enforce the agreement because the "defendant railroad company is a public service corporation, and no property reasonably necessary to the enjoyment and operation of its franchise can be sold on such writ." *Id.* In *Bachrach*, also cited by CTW, the Supreme Court addressed the rights of bondholders to payment on bonds issued and secured by a railroad company's mortgage, which was given to certain trustees for the protection of the bondholders. *Bachrach*, 133 A. at 641. The Court held the bondholders "had no legal right to enforce an attachment against this money, which equitably belongs to the trustees, for the benefit of all the bondholders." *Id.* at 642. Although both *McNulty* and *Bachrach* address limits to enforcing liens or bond payments against railroad property, neither case holds that railroads are public property whereby a construction project to improve railroad property equates to a construction project to improve Department property.

We agree with CTW that railroads are subject to regulation by the Public Utility Commission, and are "public utility corporations" with the power of eminent domain. *See e.g.,* Sections 1103 and 1511 of the Business Corporation Law of 1988, 15 Pa. C.S. §§1103 and 1511. However, these characteristics do not erase the distinction between PIT, a private rail company, and the Department, for

22

purposes of interpretating Section 102(f) of the Procurement Code. In *Pierce v. Commonwealth*, 104 Pa. 150 (1883), the Supreme Court analyzed whether a railroad company was a private corporation, where its board of directors' election was subject to the cumulative voting provision in former article 16, section 4 of the Pennsylvania Constitution that was then in effect. The Court held that the provision applied to the railroad's election of directors because "[r]ailroad and canal companies are private corporations." *Pierce*, 104 Pa. at 155. The Court favorably cited earlier case law to determine that "a railroad company is not public, nor does it stand in the place of the public; it is but a private corporation over whose rails the public may travel if [it] choose[s] to ride in its cars." *Id.* The Court further stated:

> Indeed, we regard it a misnomer to attach even the name "quasi[-]public corporation" to a railroad company, for it has none of the features of such corporations, if we except its qualified right of eminent domain, and this is because of the right reserved to the public to use its way for travel and transportation. Its officers are not public officers, and its business transactions are as private as those of a banking house. Its road may be called a quasi[-]public highway, but the company itself is a private corporation and nothing more.

*Id.* Although the RFAP grant authorized by the legislature and issued by the Department is designed to provide a general economic benefit to citizens of the Commonwealth through improved rail freight operations, the Project primarily benefits PIT, the private owner of the rail freight station improved by the grant. Because the grant here does not have the *primary* purpose to procure construction for the Department, CTW's bid protest is not permitted by Section 102(f) of the Procurement Code.

This interpretation is supported by the fact that the resulting contract, which CTW protests, is between PIT and KRS, to which the Department is not a

23

party. Therefore, the contract does not meet the definition of "contract" in Section 103 of the Procurement Code. A contract is defined in relevant part in Section 103 of the Procurement Code, as a written agreement for the procurement of construction "executed by all parties in accordance with . . . the "Commonwealth Attorneys Act." 62 Pa. C.S. §103. Section 103 of the Commonwealth Attorneys Act states that "[n]o party to an action, other than a Commonwealth agency . . . shall have standing to question the authority of the legal representation of the agency." 71 P.S. §732-103. A Commonwealth attorney did not review or approve the contract between PIT and KRS, the Department is not a party to the contract, and the Department did not execute the contract. Therefore, the contract to which CTW objects is not subject to the Procurement Code.

This interpretation is further supported by the Supreme Court's decision in *Scientific Games*, which held that a contract between two private entities arising out of a grant-funded project is not within the contract dispute provisions of the Procurement Code. *Scientific Games*, 66 A.3d at 759. The Court stated "[t]he Procurement Code establishes the administrative processes to address disputes arising in the procurement setting. On account of the doctrine of sovereign immunity, however, contractors, bidders, and offerors have limited recourse and remedies." *Id.* at 760. Although the Commonwealth agency and grant program in *Scientific Games* are different from the ones at issue here, the interpretation of the Procurement Code remedies is applicable and persuasive.

Accordingly, we affirm the Secretary's determination.

MICHAEL H. WOJCIK, Judge

24

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chesapeake Thermite Welding, LLC, : 
d/b/a CTW, :
                     :
            Petitioner :
                     :
         v. : No. 548 C.D. 2021
                     :
Department of Transportation, :
                     :
            Respondent :

# **O R D E R**

AND NOW, this 17th day of October, 2022, the Determination of the Acting Executive Deputy Secretary of the Department of Transportation dated May 4, 2021, is AFFIRMED.

 

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chesapeake Thermite Welding, LLC, :
d/b/a CTW, :
                Petitioner :
                 :
        v. : No. 548 C.D. 2021
                 : Argued: June 23, 2022
Department of Transportation, :
                Respondent :

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge
             HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

CONCURRING OPINION
BY SENIOR JUDGE LEAVITT               FILED: October 17, 2022

I join the majority's decision. I write separately to note that this construction of the Commonwealth Procurement Code[1] exposes the Department of Transportation to the type of equity action available to challenge the award of a contract as a misuse of state funds.

Section 1711.1(a) of the Procurement Code provides a right of protest to "[a] bidder or offeror, a prospective bidder or offeror or a prospective contractor that is aggrieved in connection with the solicitation or award of a contract[.]" 62 Pa. C.S. §1711.1(a). Prior to the enactment of the Procurement Code, only a taxpayer had standing to challenge the award of a contract to a party that did not submit the lowest bid on grounds that it wasted taxpayer dollars. The litigant had to be a taxpayer because a disappointed bidder has no property interest in the award of a contract and, thus, is not aggrieved. *See Michael Facchiano Contracting, Inc. v. Pennsylvania Turnpike Commission*, 621 A.2d 1058, 1059-60 (Pa. Cmwlth. 1993);

---

[1] 62 Pa. C.S. §§101-2311.

*Lutz Appellate Printers, Inc. v. Department of Property and Supplies*, 403 A.2d 530, 532 (Pa. 1979). The Procurement Code changed this paradigm by giving disappointed bidders the opportunity to challenge the solicitation or the award of a public contract.

"The enactment of the Procurement Code, however, has not taken away the right of taxpayers to bring an action in equity before this Court to enjoin the award of a contract when the bidding requirements were not followed." *Direnzo Coal Company v. Department of General Services, Bureau of Purchases*, 779 A.2d 614, 617 n.4 (Pa. Cmwlth. 2001). "An aggrieved taxpayer, who lacks standing to file a protest under the Procurement Code, may still file an equity action in this Court's original jurisdiction to protest the award of a contract." *Id.*, s*ee also Pennhurst Medical Group, P.C. v. Department of Public Welfare*, 796 A.2d 423, 426 (Pa. Cmwlth. 2002).

Here, Pittsburgh Intermodal Terminals, Inc. (PIT) received a grant from the Commonwealth to rehabilitate local railroad lines, as authorized under the Rail Freight Preservation and Improvement Act.[2] Because public monies are involved in the grant, the Department of Transportation required PIT to hire the lowest responsive bidder to do the work. Reproduced Record at 169a. Chesapeake Thermite Welding, LLC d/b/a CTW, cannot pursue the disappointed bidder provisions of the Procurement Code. However, all it has to do is find a Pennsylvania taxpayer to serve as the plaintiff in an equity action in this Court's original jurisdiction to challenge the Department of Transportation's expenditure of public funds.[3] *Balsbaugh v. Department of General Services*, 815 A.2d 36, 40 (employees

---

[2] Act of July 5, 1984, P.L. 587, No. 119, 55 P.S. §§696.1-696.11.

[3] In the instant case, however, Chesapeake Thermite Welding, LLC concedes that it is a Virginia Company and not a taxpayer of the Commonwealth. CTW Brief at 13 n.7.

of subcontractors used by the disappointed bidder had standing to bring complaint in equity because they were taxpayers in the Commonwealth).

_____
MARY HANNAH LEAVITT, President Judge Emerita

MHL-3